ACCEPTED
03-13-00025-CV
6630730
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/24/2015 5:36:03 PM
JEFFREY D. KYLE
CLERK

# The Chimene Law Firm

2827 Linkwood Dr.
Houston, TX 77025
michele@airmail.net

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/24/2015 5:36:03 PM
JEFFREY D. KYLE
Clerk

August 24, 2015

Hon. Jeffrey D. Kyle, Clerk
Texas Third Court of Appeals, Austin, Texas
P.O. Box 12547
Austin, TX. 78711

Re:  Case No. 03-13-00025-CV; *Jerry Scarbrough, et al. v. Helen Purser, et al.*; On Appeal to the Third Court of Appeals

Dear Sir:

Please bring to the Court's attention the attached copies of a case published after my clients' brief was filed and a case cited in that case.  These are *Wackenhut Corp. v. Gutierrez*, 453 S.W. 3d 917 (Tex. 2015)[1], and *Brookshire Brothers, Ltd v. Aldridge*, 438 S.W. 3d 9 (Tex. 2014).[2]

The Appellants' Objection to the spoliation instruction is found at RR Vol. 11, 9-10, and the Court's overruling of the objection is located at RR Vol. 11, 10. The argument concerning the error caused by the spoliation instruction is the Twentieth Point of Error.

Respectfully Submitted,
/s/ MB CHIMENE
Michele Barber Chimene

---

[1] According to *Wackenhut*, "A trial court may submit a[n spoliation] instruction only if it finds that (1) the spoliating party acted with intent to conceal discoverable evidence; or (2) the spoliating party acted negligently and **caused the nonspoliating party to be irreparably deprived of any meaningful ability to present a claim or defense**." *Id.* (emphasis added).

[2] "If a spoliating instruction should not have been given, the likelihood of harm from the erroneous instruction is substantial, particularly when the case is closely contested." *Brookshire Bros, supra* at 29.

*Wackenhut* letter, pg. 2

Case No. 03-13-00025-CV


cc:

JoAnn Storey
Daryl Moore
1005 Heights Blvd.
Houston, TX. 77008

Jack R. Crews
Kevin Bonner
Baird, Crews, Schiller & Whitaker, P.C.
15 N. Main St.
Temple, TX. 76501



**User Name:** Michele Chimene

**Date and Time:** Aug 24, 2015    2:27 p.m. EDT

**Job Number:** 23068036

## Document(1)

1. *Wackenhut Corp. v. Gutierrez, 453 S.W.3d 917*

   **Client/Matter:** -None-

   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | Court: Texas |

LexisNexis® | About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2015 | LexisNexis.

Michele Chimene

⬥ Positive

As of: August 24, 2015 2:27 PM EDT

# *Wackenhut Corp. v. Gutierrez*

Supreme Court of Texas

February 6, 2015, Opinion Delivered

NO. 12-0136

**Reporter**

453 S.W.3d 917; 2015 Tex. LEXIS 112; 58 Tex. Sup. J. 289

WACKENHUT CORPORATION, PETITIONER, v. JESSE JAMES GUTIERREZ, RESPONDENT

**Prior History:** [**1] ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS.

*Wackenhut Corp. v. Gutierrez, 358 S.W.3d 722, 2011 Tex. App. LEXIS 7308 (Tex. App. San Antonio, 2011)*

## Core Terms

spoliation, trial court, recording, jury charge, negligently, video, preserved, sanctions, pre trial motion, submitting, driver

## Case Summary

### Overview

HOLDINGS: [1]-In a personal injury case, petitioner preserved error in the trial court's submission of a spoliation jury instruction by responding to a pretrial motion for sanctions but later failing to object to the instruction until after it was read to the jury; [2]-The trial court was aware of, and rejected, petitioner's objection to the inclusion of a spoliation instruction before the charge was read to the jury as required by *Tex. R. Civ. P. 272*, *274*; [3]-The trial court committed reversible error by submitting the instruction, because petitioner's failure to preserve a video recording of the accident did not deprive respondent of any meaningful ability to present his claims; [4]-In light of the contested liability and counsel's closing argument, the spoliation jury instruction probably caused the rendition of an improper judgment under *Tex. R. App. P. 61.1(a)*.

### Outcome

Granted, reversed, and remanded.

## LexisNexis® Headnotes

Civil Procedure > ... > Jury Trials > Jury Instructions > Objections

*HN1* The procedural rules governing jury charges state that objections to the charge shall in every instance be presented to the court before the charge is read to the jury, and all objections not so presented shall be considered as waived. *Tex. R. Civ. P. 272*. The objecting party must point out distinctly the objectionable matter and the grounds of the objection. *Tex. R. Civ. P. 274*.

Civil Procedure > ... > Jury Trials > Jury Instructions > Objections

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Preservation for Review

Michele Chimene

*HN2* There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling. The more specific requirements of the rules should be applied to serve rather than defeat this principle.

> Evidence > Relevance > Preservation of Relevant Evidence > Spoliation
>
> Civil Procedure > Appeals > Standards of Review > Abuse of Discretion
>
> Civil Procedure > ... > Jury Trials > Jury Instructions > General Overview

*HN3* Whether a party spoliated evidence and whether a particular remedy is appropriate are questions of law for the trial court. The appellate court reviews a trial court's imposition of spoliation sanctions under an abuse-of-discretion standard. The Supreme Court of Texas has articulated specific restrictions on a trial court's discretion to submit a spoliation instruction to the jury in the event it finds that a party spoliated evidence. A trial court may submit an instruction only if it finds that (1) the spoliating party acted with intent to conceal discoverable evidence; or (2) the spoliating party acted negligently and caused the nonspoliating party to be irreparably deprived of any meaningful ability to present a claim or defense.

> Civil Procedure > Appeals > Standards of Review > Reversible Errors
>
> Evidence > Relevance > Preservation of Relevant Evidence > Spoliation
>
> Civil Procedure > ... > Jury Trials > Jury Instructions > General Overview

*HN4* The trial court's error is reversible only if it probably caused the rendition of an improper judgment. *Tex. R. App. P. 61.1(a)*. If a spoliation instruction should not have been given, the likelihood of harm from the erroneous instruction is substantial, particularly when the case is closely contested.

**Counsel:** For Wackenhut Corporation, Petitioner: Jaime A. Saenz, Lecia Lynne Chaney, Colvin, Chaney, Saenz & Rodriguez L.L.P., Brownsville TX; Michael W. Eady, Sara Berkeley Churchin, Thompson, Coe, Cousins & Irons, L.L.P., Austin TX; Jesus M. Dovalina, Law Offices of Jesus M. Dovalina, P.C., Del Rio TX; Kimberly S. Keller, Keller Stolarczyk PLLC, Boerne TX.

For Jesse James Gutierrez, Respondent: Jesus M. Dovalina, P.C., Del Rio TX; Kimberly S. Keller, Keller Stolarczyk PLLC, Boerne TX.

# Opinion

 **[*918] PER CURIAM**

This personal injury suit raises two issues pertaining to the trial court's submission of a spoliation jury instruction. First, we consider whether the party opposing the instruction preserved error by responding to a pretrial motion for sanctions but later failing to formally object to the instruction's inclusion in the jury charge until after it was read to the jury. Second, if error was preserved, we must determine whether the trial court committed reversible error by submitting the instruction. We answer both questions in the affirmative.

Wackenhut Corporation owned and operated a charter bus that collided with a car driven **[**2]** by Jesse Gutierrez. Wackenhut's bus was equipped with four video cameras that recorded while the bus was running but not when the bus's power was turned off. After 168 hours—or seven days—of recording, the videos automatically looped over and erased previously recorded data. One of the cameras was positioned so that it may have captured the actual impact,[1] but Wackenhut did not preserve this recording, and it was eventually looped over.

Two days after the accident, Gutierrez personally delivered a letter to Wackenhut detailing his recollection of the collision. In the letter, Gutierrez stated that he believed Wackenhut's driver had caused the accident, and that Gutierrez had been taken

---

[1] The camera at issue was located outside the passenger door, viewing the side of the bus that was involved in the accident.

to the hospital and would follow up with his doctor. Wackenhut completed a ″General Liability Notice of Occurrence/Claim″ and sent it along with Gutierrez's letter to the company's corporate headquarters.

 [*919] Almost two years after the accident, Gutierrez sued Wackenhut and the bus driver for negligence, seeking damages for the injuries he sustained in the collision. Before trial, Gutierrez [**3]  filed a Motion for Spoliation of Evidence, requesting that Wackenhut be sanctioned because it intentionally or negligently destroyed the video recording of the accident. In that motion, Gutierrez argued he was entitled to a presumption that the recording would have been unfavorable to Wackenhut. In its response, Wackenhut argued that there was no evidence of either intentional or negligent spoliation, that the requested sanctions—including the spoliation instruction—were unwarranted, and that all evidence of the alleged spoliation should be excluded.

During trial, after Gutierrez rested, the trial court ruled orally that Wackenhut had negligently spoliated evidence and ordered the inclusion of a spoliation instruction in the jury charge. Upon the completion of trial testimony, each party submitted a proposed jury charge and attended a formal charge conference. During the conference, Wackenhut did not object to the spoliation instruction in the court's charge.[2] Immediately after the court read the charge to the jury, Wackenhut's counsel approached the bench and objected to the submission of the spoliation instruction. The trial court acknowledged the objection, but did not comment further [**4] on the instruction. The jury found in Gutierrez's favor, and the trial court rendered judgment on the verdict for $1,201,050.08 in damages and prejudgment interest. Wackenhut appealed.

The court of appeals affirmed, overruling Wackenhut's sole issue—that the trial court erred in submitting the spoliation instruction. *358 S.W.3d 722, 724-25*. Relying on *Texas Rule of Civil Procedure 272*, the court held that, because Wackenhut did not object to the instruction until after the trial court read the charge to the jury and did not provide a specific ground for the objection, Wackenhut waived any complaint it had about the instruction. *Id*.

Wackenhut argues that, by detailing its reasons for opposing spoliation sanctions generally and a spoliation instruction in particular in its response to Gutierrez's pretrial motion for [**5]  sanctions, it timely made the trial court aware of its complaint. Because the trial court ruled on the motion, Wackenhut contends that it was not required to later object to the jury charge. Wackenhut further argues that the trial court abused its discretion by including the spoliation instruction in the charge and that this error was harmful. Gutierrez counters that Wackenhut failed to preserve error, that the trial court acted within its discretion, and that any error was harmless.

We first address the issue of error preservation. *HN1* The procedural rules governing jury charges state in pertinent part that objections to the charge ″shall in every instance be presented to the court . . . before the charge is read to the jury″ and that ″[a]ll objections not so presented shall be considered as waived.″ *Tex. R. Civ. P. 272*. Further, the objecting party ″must point out distinctly the objectionable matter and the grounds of the objection.″ *Tex. R. Civ. P. 274*. However, we have previously explained that *HN2* ″[t]here should  [*920]  be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.″ [**6]  *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992); *see also Ford Motor Co. v. Ledesma, 242 S.W.3d 32, 43 (Tex. 2007)*. ″The more specific requirements of the rules should be applied . . . to serve rather than defeat this principle.″ *Payne*, 838 S.W.2d at 241.

Here, the record confirms that the trial court was aware of, and rejected, Wackenhut's objection to the inclusion of a spoliation instruction before the charge was read to the jury. In its opposition to Gutierrez's pretrial motion for sanctions, Wackenhut argued that (1) it had no duty to retain the video prior to being served with citation in this suit, (2) there was no evidence that the tape would actually have recorded the accident, (3) there was no evidence that Wackenhut intentionally or negligently destroyed the recording because it was looped over in the regular course of business before Wackenhut had

---

[2]   The instruction read: ″Parties to a lawsuit are under a duty to preserve evidence that they know or should know is relevant to the dispute. In this case, The Wackenhut Corporation negligently failed to preserve the video on the bus, and it did so while there was an anticipation of litigation and while it had a duty to preserve evidence. You may, therefore, presume that the videotape was unfavorable to The Wackenhut Corporation.″

notice of any claim, and (4) any spoliation did not prejudice Gutierrez because of the availability of other evidence. In turn, Wackenhut specifically argued that a spoliation instruction would be improper. The trial court ruled that a spoliation instruction would be submitted to the jury.

Further, during the hearing on Wackenhut's motion for new trial, the following conversation took place:

> [COUNSEL FOR WACKENHUT]: [T]he court made a ruling that the instruction **[**7]** would go to the jury, and then the court took argument on that, and that's how we ended up with this particular instruction, but it was given over objection.
>
> THE COURT: [Y]ou are correct. The court heard argument, made its ruling on the instruction.
>
> * * *
>
> [COUNSEL FOR WACKENHUT]: For the record, Your Honor, I think it is clear that Wackenhut did object to any spoliation instruction going to the jury at all, . . . and so there is no waiver here. There was an objection to any instruction going to the jury.
>
> THE COURT: I don't deny that, because I noted that on record that the objection was made to the charge . . . .

In light of Wackenhut's specific reasons in its pretrial briefing for opposing a spoliation instruction and the trial court's recognition that it submitted the instruction over Wackenhut's objection, there is no doubt that Wackenhut timely made the trial court aware of its complaint and obtained a ruling. Under the circumstances presented here, application of _Rules 272_ and _274_ in the manner Gutierrez proposes would defeat their underlying principle. _See Payne_, 838 S.W.2d at 241. Therefore, we conclude that Wackenhut preserved error.[3]

**[*921]** Next, we turn to the propriety of the trial court's submission of the spoliation instruction to the jury in light of our recent decision in _Brookshire Brothers, Ltd. v. Aldridge, 438 S.W.3d 9 (Tex. 2014)_. Applying the _Brookshire Brothers_ framework, we hold that the trial court abused its discretion in submitting the instruction.

_HN3_ Whether a party spoliated evidence and whether a particular remedy is appropriate are questions of law for the trial court. _Id. at 14, 20_. We review a trial court's imposition of spoliation sanctions under an abuse-of-discretion standard. _Id. at 27_. In _Brookshire Brothers_, we articulated specific restrictions on a trial court's discretion to submit a spoliation instruction to the jury in the event it finds that a party spoliated evidence. _Id. at 23-26_. Specifically, **[**10]** a trial court may submit an instruction only if it finds that (1) the spoliating party acted with intent to conceal discoverable evidence, or (2) the spoliating party acted negligently and caused the nonspoliating party to be irreparably deprived of any meaningful ability to present a claim or defense. _Id._

---

[3] To the extent concerns exist that this holding will open the floodgates to preservation **[**8]** of trial error by way of pretrial motion in other contexts, such concerns are unfounded. A motion in limine, for example, does not preserve error on evidentiary rulings at trial because it does not seek a ruling on admissibility; rather, the purpose of such a motion "is to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury" without seeking the trial court's permission. _Hartford Accident & Indem. Co. v. McCardell_, 369 S.W.2d 331, 335 (Tex. 1963). And a denied pretrial no-evidence motion for summary judgment does not preserve a no-evidence objection to a question in the jury charge, as the latter is premised on the evidence (or lack thereof) presented at trial and thus cannot properly be asserted before trial. In the unique circumstances presented here, the course of the trial does not affect the propriety of a spoliation instruction. _Brookshire Bros., Ltd. v. Aldridge_, 438 S.W.3d 9, 20, 26 (holding that whether spoliation occurred and the propriety of a particular spoliation remedy are issues of law for the trial court and that evidence of spoliation is generally inadmissible at trial). And the relief Wackenhut sought in its opposition to the pretrial motion for sanctions—findings that it did not negligently or intentionally spoliate evidence and that **[**9]** the submission of a spoliation instruction was improper—is exactly what the trial court rejected in its oral ruling. Notably, Wackenhut's formal objection to the instruction after the charge was read to the jury was not to the particular wording of the instruction; such a complaint had never before been brought to the trial court's attention and would have been untimely. Rather, mirroring its rejected pretrial position, Wackenhut objected to the submission of a spoliation instruction in any form.

Here, the trial court found that Wackenhut negligently spoliated evidence in failing to preserve the recording.[4] Even assuming that finding is correct, which Wackenhut disputes, the trial court nevertheless abused its discretion by submitting the spoliation instruction. To justify the instruction based on this negligence finding, the spoliation must have irreparably deprived Gutierrez of any meaningful ability to present his claims. This, we conclude, Wackenhut's failure to preserve the recording did not do.

The evidence presented at trial included: the testimony of both drivers; the testimony of an eyewitness Wackenhut employee; witness statements prepared by the drivers and the witness at the time of the accident; testimony of the responding police [**11] officer; the police report; Wackenhut's report to its corporate headquarters; photos of the vehicles and the accident scene; and extensive medical records. In light of the abundance of available evidence, we hold that Gutierrez was not irreparably deprived of any meaningful ability to present his claim. Therefore, the trial court abused its discretion by submitting the spoliation instruction to the jury.

Finally, *HN4* the trial court's error is reversible only if it probably caused the rendition of an improper judgment. *Id. at 29*; *Tex. R. App. P. 61.1(a)*. We have previously noted that, "'if a spoliation instruction should not have been given, the likelihood of harm from the erroneous instruction is substantial, particularly when the case is closely contested.'" *Brookshire Bros., 438 S.W.3d at 29* (quoting *Wal-Mart Stores, Inc. v. Johnson, 106 S.W.3d 718, 724* [*922] (Tex. 2003)). Liability was closely contested in this case. Gutierrez claimed that he drove slowly because it was raining, while the Wackenhut employees testified that Gutierrez was speeding. In addition, during his opening statement, Gutierrez's counsel stated that "[t]here is a video camera that would have captured . . . if Mr. Gutierrez was coming speeding as they claim. . . . It clarifies who was telling the truth." Further, and more significantly, during [**12] closing arguments, counsel placed significant emphasis on the spoliation instruction:

> Therefore, because of that, you may presume—you are free to look at this and say that videotape, had they shown it, it would have shown that what the driver of that bus is saying and what Mrs. Rivera, the co-driver, is saying is against them. It's not the way they said. It's the way Mr. Gutierrez said it happened.

In light of the contested liability, counsel's statements, and the highly speculative probative value of the recording,[5] the record reflects the significant effect the spoliation instruction likely had on the trial. Therefore, we hold that the trial court's error probably caused the rendition of an improper judgment.

Accordingly, we grant Wackenhut's petition for review and, without hearing oral argument, reverse the court of appeals' judgment and remand the case to the trial court for a new trial in accordance with this opinion. *Tex. R. App. P. 59.1*.

**OPINION DELIVERED**: February 6, 2015

---

[4] In so holding, the trial court also expressly found that the evidence did not show that Wackenhut "intentionally destroyed" the video.

[5] The collision took place around 8:00 p.m. on a stormy evening with heavy rain.



**User Name:** Michele Chimene

**Date and Time:** Aug 24, 2015    3:03 p.m. EDT

**Job Number:** 23070900

## Document(1)

1.   *Brookshire Bros., Ltd. v. Aldridge, 438 S.W.3d 9*

   **Client/Matter:** -None-

   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

# *Brookshire Bros., Ltd. v. Aldridge*

Supreme Court of Texas

September 12, 2012, Argued; July 3, 2014, Opinion Delivered

NO. 10-0846

**Reporter**

438 S.W.3d 9; 2014 Tex. LEXIS 562; 57 Tex. Sup. J. 947; 2014 WL 2994435

BROOKSHIRE BROTHERS, LTD., PETITIONER, v. JERRY ALDRIDGE, RESPONDENT

**Subsequent History:** Motion granted by *Brookshire Bros. v. Aldridge, 2014 Tex. LEXIS 613 (Tex., July 18, 2014)*

**Prior History:** [**1] ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS.
*Brookshire Bro, Ltd. v. Aldridge, 2010 Tex. App. LEXIS 6065 (Tex. App. Tyler, July 30, 2010)*

## Core Terms

spoliation, trial court, footage, video, party's, relevant evidence, destroying evidence, destroyed, nonspoliating, remedies, preserved, destruction, retention, courts, jury instructions, floor, circumstances, electronic, sanctions, minutes, presume, adverse inference, court of appeals, duty to preserve, deprived, willful, issues, negligently, blindness, breached

## Case Summary

### Overview

HOLDINGS: [1]-In this slip-and-fall premises-liability action, the spoliation analysis involved a two-step judicial process: (1) the trial court must determine, as a question of law, whether a party spoliated evidence, and (2) if spoliation occurred, the court must assess an appropriate remedy; [2]-To conclude that a party spoliated evidence, the court must find that (1) the spoliating party had a duty to reasonably preserve evidence, and (2) the party intentionally or negligently breached that duty by failing to do so; [3]-The submission of a spoliation instruction in any form was an abuse of discretion because, assuming that the grocery store had and breached a duty to reasonably preserve evidence by saving an insufficient amount of video footage, prejudicing the customer, there was no evidence that it did so with the requisite intent to conceal or destroy relevant evidence.

### Outcome

Judgment reversed. Matter remanded for new trial.

## LexisNexis® Headnotes

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview

Civil Procedure > Trials > Jury Trials > Province of Court & Jury

Michele Chimene

*HN1* A spoliation analysis involves a two-step judicial process: (1) the trial court must determine, as a question of law, whether a party spoliated evidence, and (2) if spoliation occurred, the court must assess an appropriate remedy. To conclude that a party spoliated evidence, the court must find that (1) the spoliating party had a duty to reasonably preserve evidence, and (2) the party intentionally or negligently breached that duty by failing to do so. Spoliation findings—and their related sanctions—are to be determined by the trial judge, outside the presence of the jury, in order to avoid unfairly prejudicing the jury by the presentation of evidence that is unrelated to the facts underlying the lawsuit. Accordingly, evidence bearing directly upon whether a party has spoliated evidence is not to be presented to the jury except insofar as it relates to the substance of the lawsuit. Upon a finding of spoliation, the trial court has broad discretion to impose a remedy that, as with any discovery sanction, must be proportionate; that is, it must relate directly to the conduct giving rise to the sanction and may not be excessive. Key considerations in imposing a remedy are the level of culpability of the spoliating party and the degree of prejudice, if any, suffered by the nonspoliating party.

Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Civil Procedure > ... > Jury Trials > Jury Instructions > General Overview

Evidence > Inferences & Presumptions > Presumptions

*HN2* While the spectrum of remedies that may be imposed range from an award of attorney's fees to the dismissal of the lawsuit, the harsh remedy of a spoliation instruction is warranted only when the trial court finds that the spoliating party acted with the specific intent of concealing discoverable evidence, and that a less severe remedy would be insufficient to reduce the prejudice caused by the spoliation. This intent requirement is congruent with the presumption underlying a spoliation instruction—that the evidence would have hurt the wrongdoer. A failure to preserve evidence with a negligent mental state may only underlie a spoliation instruction in the rare situation in which a nonspoliating party has been irreparably deprived of any meaningful ability to present a claim or defense.

Torts > ... > Activities & Conditions > Slip & Fall Injuries > Elements

Torts > ... > General Premises Liability > Dangerous Conditions > Known Dangers

*HN3* To recover in a slip-and-fall case, a plaintiff must prove, inter alia, that the defendant had actual or constructive knowledge of a dangerous condition on the premises such as a slippery substance on the floor, which may be accomplished with a showing that (1) the defendant placed the substance on the floor, (2) the defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

*HN4* The spoliation of evidence is a serious issue. A party's failure to reasonably preserve discoverable evidence may significantly hamper the nonspoliating party's ability to present its claims or defenses, and can undermine the truth-seeking function of the judicial system and the adjudicatory process. In some circumstances, a missing piece of evidence like a photograph or video can be irreplaceable. Testimony as to what the lost or destroyed evidence might have shown will not always restore the nonspoliating party to an approximation of its position if the evidence were available; sometimes a picture is indeed worth a thousand words.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Evidence > Inferences & Presumptions > Presumptions

Civil Procedure > ... > Jury Trials > Jury Instructions > General Overview

*HN5* Courts have broad discretion to utilize a variety of remedies to address spoliation, including the spoliation instruction. The instruction is an important remedy, but its use can affect the fundamental fairness of the trial in ways as troubling as the spoliating conduct itself. Because the instruction itself is given to compensate for the absence of evidence that a party had a duty to preserve, its very purpose is to nudge or tilt the jury toward a finding adverse to the alleged spoliator. Thus,

an unfortunate consequence of submitting a spoliation instruction is that it often ends litigation because it is too difficult a hurdle for the spoliator to overcome. This ″nudging″ or ″tilting″ of the jury is magnified by the presentation of evidence that emphasizes the spoliator's wrongful conduct rather than the merits of the suit. Added to these concerns are the complexities surrounding evidence preservation in today's world, as technology has advanced to allow potential litigants to store larger volumes of electronic information. Thus, while electronic data can be a valuable source of evidence, it can also make compliance with one's responsibility to preserve and produce such data much more difficult and expensive.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

**HN6** Because of the prevalence of discoverable electronic data and the uncertainties associated with preserving that data, sanctions concerning the spoliation of electronic information have reached an all-time high.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview

Civil Procedure > ... > Discovery > Electronic Discovery > General Overview

**HN7** The Federal Rules of Civil Procedure were amended in 2006 to prohibit federal courts from imposing sanctions when discoverable electronic evidence is lost as a result of the routine, good-faith operation of an electronic information system. *Fed. R. Civ. P. 37(e)*. The Texas rules do not contain a comparable provision, but the challenges facing Texas courts are just as acute. Merits determinations are significantly affected by both spoliation instructions and the conduct that gives rise to them. When a party is inherently prevented from having the merits of its case adjudicated, constitutional due process is implicated.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

**HN8** In Texas, spoliation is an evidentiary concept rather than a separate cause of action. In declining to recognize spoliation as an independent tort, courts must have adequate measures to ensure that it does not improperly impair a litigant's rights. Thus, when evidence is lost, altered, or destroyed, trial courts have the discretion to impose an appropriate remedy so that the parties are restored to a rough approximation of what their positions would have been were the evidence available. Texas courts necessarily enjoy wide latitude in remedying acts of discovery abuse, including evidence spoliation.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Evidence > Inferences & Presumptions > Presumptions > Rebuttal of Presumptions

**HN9** Neither the Texas Rules of Evidence nor the Texas Rules of Civil Procedure specifically address spoliation. However, the Supreme Court of Texas recognized the concept as early as 1852, when it adopted the principle that all things are presumed against the wrongdoer; this is known as the spoliation presumption.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

**HN10** The courts of appeals have generally followed two basic frameworks in evaluating the propriety of a spoliation remedy. Under the analytical framework, a party may be entitled to a remedy for the opposing party's spoliation of evidence if the party establishes three elements: (1) the party who destroyed or failed to produce evidence had a duty to preserve it; (2) the party either negligently or intentionally breached that duty by destroying the evidence or rendering it unavailable; and (3) the breach prejudiced the nonspoliating party. In evaluating prejudice, courts should consider the destroyed evidence's relevance, whether other cumulative evidence exists to take the place of the spoliated evidence, and whether the destroyed evidence supports key issues in the case.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Evidence > Inferences & Presumptions > Presumptions

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

*HN11* The second distinct framework applied by the courts of appeals in evaluating the propriety of a spoliation remedy focuses on the so-called presumptions arising from a party's destruction of or failure to produce evidence. The courts of appeals have generally limited the use of a spoliation instruction to two circumstances (generally referred to as the "two rules"): (1) a party's deliberate destruction of relevant evidence, and (2) a party's failure to produce relevant evidence or explain its nonproduction. Under the first rule, a presumption arises that a party who deliberately destroys evidence does so because it is unfavorable to the party's case. Under the second, the same presumption arises because the party who controls the missing evidence is unable to explain its failure to produce the evidence. Some courts of appeals have referred solely to the two rules in determining the propriety of a spoliation instruction, while others have referred to both the framework and the two rules in determining whether the trial court abused its discretion in charging the jury with a spoliation instruction.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Civil Procedure > Trials > Jury Trials > Province of Court & Jury

*HN12* Spoliation is an evidentiary concept, not a separate cause of action. It is well-established that evidentiary matters are resolved by the trial court. Further, spoliation is essentially a particularized form of discovery abuse, in that it ultimately results in the failure to produce discoverable evidence, and discovery matters are also within the sole province of the trial court. Finally, presenting spoliation issues to the jury for resolution magnifies the concern that the focus of the trial will shift from the merits to a party's spoliating conduct. For these reasons, the trial court rather than the jury, must determine whether a party spoliated evidence and, if so, impose the appropriate remedy. The trial court may hold an evidentiary hearing to assist the court in making spoliation findings, but not in the presence of the jury. Placing the responsibility on the trial court to make spoliation findings and to determine the proper remedy is a key mechanism in ensuring the jury's focus stays where it belongs—on the merits.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Evidence > Burdens of Proof > Allocation

*HN13* A party alleging spoliation bears the burden of establishing that the nonproducing party had a duty to preserve the evidence. The standard governing the duty to preserve resolves two related inquiries: when the duty is triggered, and the scope of that duty. Specifically, such a duty arises only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim. In turn, a substantial chance of litigation arises when litigation is more than merely an abstract possibility or unwarranted fear.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

*HN14* The party seeking a remedy for spoliation must demonstrate that the other party breached its duty to preserve material and relevant evidence. If a party possesses a duty to preserve evidence, it is inherent that a party breaches that duty by failing to exercise reasonable care to do so. Otherwise, the nonspoliating party would have no legitimate reason to seek a spoliation remedy. Further, the breach may be either intentional or negligent.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

*HN15* A party does not breach its duty to preserve relevant evidence if such evidence is lost or destroyed through no fault of the party from whom the evidence is sought, such as by an act of God. Given that spoliation sanctions, while primarily remedial, also serve a punitive purpose, they are not appropriately imposed against an innocent party, regardless of the extent to which another party is prejudiced.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview

*HN16* After a court determines that a party has spoliated evidence by breaching its duty to preserve such evidence, it may impose an appropriate remedy. *Tex. R. Civ. P. 215.2* enumerates a wide array of remedies available to a trial court in addressing discovery abuse, such as an award of attorney's fees or costs to the harmed party, exclusion of evidence, striking a party's pleadings, or even dismissing a party's claims. *Tex. R. Civ. P. 215.2*, *215.3*. These remedies are available in the spoliation context. The trial court also has discretion to craft other remedies it deems appropriate in light of the particular facts of an individual case, including the submission of a spoliation instruction to the jury.

Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

*HN17* In accordance with well-settled precedent on remedying discovery abuse, the remedy must have a direct relationship to the act of spoliation and may not be excessive. In other words, the remedy crafted by the trial court must be proportionate when weighing the culpability of the spoliating party and the prejudice to the nonspoliating party. This logically follows from the remedial purpose undergirding the imposition of a spoliation remedy under Texas law, which is to restore the parties to a rough approximation of their positions if all evidence were available.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview

*HN18* The courts of appeals evaluate prejudice largely on the considerations of the relevance of the spoliated evidence to key issues in the case, the harmful effect of the evidence on the spoliating party's case (or, conversely, whether the evidence would have been helpful to the nonspoliating party's case), and whether the spoliated evidence was cumulative of other competent evidence that may be used instead of the spoliated evidence. These factors have proved workable in the courts of appeals, are similar to the test followed by federal courts, and provide guidance to the trial courts in analyzing prejudice in a specific case. Accordingly, the Supreme Court of Texas adopts them.

Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Evidence > Inferences & Presumptions > Presumptions

*HN19* In light of the difficulty of conducting a prejudice analysis based on evidence that is no longer available for review, a party's intentional destruction of evidence may, absent evidence to the contrary, be sufficient by itself to support a finding that the spoliated evidence is both relevant and harmful to the spoliating party. This flows from the common-law spoliation presumption that all things are presumed against the wrongdoer. Conversely, negligent spoliation could not be enough to support such a finding without some proof about what the destroyed evidence would show. In any event, the trial court should of course consider all evidence bearing on the factors associated with evaluating prejudice to the nonspoliating party.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview

*HN20* A trial court should exercise caution in evaluating the final prejudice factor, which accounts for the existence of cumulative evidence. For example, a spoliating party might argue that no prejudice resulted from spoliation of a video of an incident because there is also eyewitness testimony regarding the incident. But many of the inherent problems with such testimony—inaccurate memory, poor eyesight, bias, etc.—are simply not present with a video recording. Again, a picture is often worth a thousand words. The same can be true with respect to testimony regarding the contents of a destroyed document, compared to the document itself. The differences in kind and quality between the available evidence and the spoliated evidence will thus be a key factor in analyzing prejudice to the nonspoliating party.

Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Civil Procedure > ... > Jury Trials > Jury Instructions > General Overview

*HN21* Though the purpose of a spoliation remedy has been described in remedial rather than punitive terms, a spoliation instruction is still inherently a sanction. Further, it is among the harshest sanctions a trial court may utilize to remedy an act of spoliation. Because a spoliation instruction has the propensity to tilt a trial in favor of a nonspoliating party, it can, in some sense, be tantamount to a death-penalty sanction. At the same time, the destruction of relevant evidence can also unfairly skew the outcome of a trial. Thus, improper use of a spoliation instruction can deprive either party of the right to a fair trial on the merits of the case. It follows that an instruction should be available to address spoliation in certain circumstances, but should be used cautiously.

Civil Procedure > ... > Jury Trials > Jury Instructions > General Overview

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview

*HN22* A party must intentionally spoliate evidence in order for a spoliation instruction to constitute an appropriate remedy. Although some Texas courts of appeals have approved spoliation instructions on the basis of negligent spoliation, this approach lacks a basis in Texas common law. First, a spoliation instruction may be given when a party deliberately destroys evidence. Second, a person who merely negligently destroys evidence lacks the state of mind of a "wrongdoer," and it makes little sense to infer that a party who only negligently lost or destroyed evidence did so because it was unfavorable to the party's case. Courts that allow a negligent state of mind to warrant the submission of a spoliation instruction tend to reason that the need to deter and punish spoliation is a sufficient basis for the instruction. However, in Texas, the instruction is based on the presumption of wrongdoing, so it follows that the more appropriate requirement is intent to conceal or destroy discoverable evidence.

Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

*HN23* There must be a direct relationship between the offensive conduct and the sanction imposed, and the sanction may not be excessive. Sanctions that are so severe as to inhibit presentation of the merits of a case should be reserved to address a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

*HN24* "Intentional" spoliation, often referenced as "bad faith" or "willful" spoliation, means that the party acted with the subjective purpose of concealing or destroying discoverable evidence. This includes the concept of "willful blindness," which encompasses the scenario in which a party does not directly destroy evidence known to be relevant and discoverable, but nonetheless allows for its destruction.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Civil Procedure > ... > Discovery > Electronic Discovery > General Overview

*HN25* The issue of willful blindness is especially acute in the context of automatic electronic deletion systems. A party with control over one of these systems who intentionally allows relevant information to be erased can hardly be said to have only negligently destroyed evidence, though courts recognize the complexities of these determinations when a potential litigant who controls massive volumes of electronic data is attempting to determine, prelitigation, which information is likely to be discoverable.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview

Civil Procedure > ... > Jury Trials > Jury Instructions > General Overview

*HN26* A trial court's finding of intentional spoliation is a necessary predicate to the proper submission of a spoliation instruction to the jury. In the event the trial court makes such a finding and concludes, as with any sanction, that a lesser

remedy would be insufficient to ameliorate the prejudice caused by the spoliating party's conduct, the trial court is within its discretion in submitting an instruction.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

**HN27** On rare occasions, a situation may arise in which a party's negligent breach of its duty to reasonably preserve evidence irreparably prevents the nonspoliating party from having any meaningful opportunity to present a claim or defense.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Civil Procedure > ... > Jury Trials > Jury Instructions > General Overview

Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview

**HN28** A spoliation instruction would not be be excessive if the act of spoliation, although merely negligent, so prejudices the nonspoliating party that it is irreparably deprived of having any meaningful ability to present a claim or defense. In this rare circumstance, a court should have the discretion to remedy such extreme and irreparable prejudice to the nonspoliating party with a spoliation instruction, even if the trial court determines that the evidence was only negligently lost or destroyed.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Evidence > Relevance > Relevant Evidence

Evidence > Relevance > Exclusion of Relevant Evidence > Confusion, Prejudice & Waste of Time

**HN29** An issue that commonly arises when a party is accused of spoliation is the admissibility of evidence at trial relating to whether spoliation occurred and the culpability of the spoliating party. Under the Texas Rules of Evidence, admissible evidence must be relevant, which is defined as having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Tex. R. Evid. 401*. Further, a trial court may exclude even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. *Tex. R. Evid. 403*.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Evidence > Relevance > Relevant Evidence

Civil Procedure > Trials > Jury Trials > Province of Court & Jury

Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview

**HN30** The trial court, not the jury, bears responsibility for making the required spoliation findings and imposing a remedy affects the propriety of admitting evidence regarding spoliation at trial. When a party requests spoliation sanctions, the trial court decides whether the accused party owed and breached a duty to preserve relevant evidence, assesses the culpability level of the spoliator, evaluates the prejudice suffered by the nonspoliating party, and imposes a remedy. The evidence considered by the trial court in making these findings, however, often has no bearing on the facts that are of consequence to the determination of the action from the jury's perspective. *Tex. R. Evid. 401*. This lack of relevance is reinforced by the longstanding refusal to recognize spoliation as an independent cause of action. Further, the tendency of such evidence to skew the focus of the trial from the merits to the conduct of the spoliating party raises a significant risk of both prejudice and confusion of the issues.

Civil Procedure > Trials > Jury Trials > Province of Court & Jury

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Evidence > Types of Evidence > Documentary Evidence > Best Evidence Rule

*HN31* All references to missing evidence, whether lost due to a party's spoliation or missing for some other reason, cannot and should not be foreclosed. For example, to the extent permitted by the Texas Rules of Evidence, parties may present indirect evidence to attempt to prove the contents of missing evidence that is otherwise relevant to a claim or defense, such as a person's testimony about the content of a missing document, photo, or recording. *Tex. R. Evid. 1002*; *Tex. R. Evid. 1004(a)*. However, there is no basis on which to allow the jury to hear evidence that is unrelated to the merits of the case, but serves only to highlight the spoliating party's breach and culpability. While such evidence may be central to the trial court's spoliation findings, it has no bearing on the issues to be resolved by the jury.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Civil Procedure > ... > Jury Trials > Jury Instructions > General Overview

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

*HN32* An appellate court reviews a trial court's imposition of a spoliation remedy, including the submission of a spoliation instruction to the jury, for an abuse of discretion. The appellate court similarly evaluates the court's admission of evidence under an abuse-of-discretion standard.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Civil Procedure > ... > Jury Trials > Jury Instructions > General Overview

Civil Procedure > Appeals > Standards of Review > Reversible Errors

*HN33* A trial court's error is reversible, however, only if it probably caused the rendition of an improper judgment. *Tex. R. App. P. 61.1(a)*. If a spoliation instruction should not have been given, the likelihood of harm from the erroneous instruction is substantial, particularly when the case is closely contested.

Evidence > Relevance > Preservation of Relevant Evidence > Spoliation

Civil Procedure > ... > Jury Trials > Jury Instructions > General Overview

*HN34* An improper spoliation instruction presents a substantial likelihood of harm.

Civil Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

*HN35* One of the grounds on which an appellate court will uphold a legal sufficiency challenge is if the evidence offered to prove a vital fact is no more than a scintilla. Evidence does not exceed a scintilla if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists. In reviewing evidence in the context of a legal sufficiency challenge, the appellate court credits evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so.

Torts > ... > General Premises Liability > Dangerous Conditions > Known Dangers

Torts > ... > Activities & Conditions > Slip & Fall Injuries > Elements

*HN36* In the context of a slip and fall action, temporal evidence is the best indicator of whether an owner could have discovered and remedied the condition.

**Counsel:** For Kroger Texas LP, Amicus Curiae: Brock C. Akers, Phillips, Akers, Womac, Houston TX.

For Texas Association of Defense Counsel, Amicus Curiae: Diana L. Faust, Cooper & Scully, P.C., Dallas TX.

For Texas Retailers Association, Amicus Curiae: Allison Haver Gabbert, Bush & Ramirez, L.L.C., Houston TX.

For Brookshire Brothers, Ltd., Petitioner: Krystal Elaine Garcia Riley, Zeleskey Law Firm PLLC, Lufkin TX; Robert T. Cain Jr., Alderman & Cain PLLC, Lufkin TX; Scott C. Skelton, Skelton Slusher Barnhill Watkin Wells PLLC, Lufkin TX.

For Aldridge, Jerry, Respondent: Darrin M. Walker, Law Office of Darrin Walker, Kingwood TX; George Chandler, Michael Kirk Mathis, Chandler Mathis & Zivley PC, Lufkin TX.

**Judges:** JUSTICE LEHRMANN delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE JOHNSON, JUSTICE WILLETT, and JUSTICE BOYD joined. JUSTICE GUZMAN filed a dissenting opinion, in which JUSTICE DEVINE and JUSTICE BROWN joined.

**Opinion by:** Debra H. Lehrmann

# Opinion

 **[*13]** A fundamental tenet of our legal system is that each and every trial is decided on the merits of the lawsuit being tried. After all, reaching the correct **[**2]** verdict is the goal of a fair and impartial judiciary. However, when the spoliation of evidence is at issue, this goal is hampered in conflicting ways. First, as is the case when evidence is lost or destroyed for any reason, spoliation can deprive the factfinder of relevant evidence, which can in turn negatively impact the fairness of the trial. Trial courts therefore must have wide discretion in remedying such conduct and in imposing sanctions to deter it. However, the imposition of a severe spoliation sanction, such as a spoliation jury instruction, can shift the focus of the case from the merits of the lawsuit to the improper conduct that was allegedly committed by one of the parties during the course of the litigation process. The problem is magnified when evidence regarding the spoliating conduct is presented to a jury. Like the spoliating conduct itself, this shift can unfairly skew a jury verdict, resulting in a **[*14]** judgment that is based not on the facts of the case, but on the conduct of the parties during or in anticipation of litigation.

Modern technology has added another layer of complexity to these competing concerns. Due to the exponential increase in the volume of electronic **[**3]** data being generated and stored, maintaining the balance between the significant interest in preserving relevant evidence and the burdens associated with doing so has become increasingly difficult.

Today we enunciate with greater clarity the standards governing whether an act of spoliation has occurred and the parameters of a trial court's discretion to impose a remedy upon a finding of spoliation, including submission of a spoliation instruction to the jury. We first hold that *HN1* a spoliation analysis involves a two-step judicial process: (1) the trial court must determine, as a question of law, whether a party spoliated evidence, and (2) if spoliation occurred, the court must assess an appropriate remedy. To conclude that a party spoliated evidence, the court must find that (1) the spoliating party had a duty to reasonably preserve evidence, and (2) the party intentionally or negligently breached that duty by failing to do so. Spoliation findings—and their related sanctions—are to be determined by the trial judge, outside the presence of the jury, in order to avoid unfairly prejudicing the jury by the presentation of evidence that is unrelated to the facts underlying the lawsuit. Accordingly, **[**4]** evidence bearing directly upon whether a party has spoliated evidence is not to be presented to the jury except insofar as it relates to the substance of the lawsuit. Upon a finding of spoliation, the trial court has broad discretion to impose a remedy that, as with any discovery sanction, must be proportionate; that is, it must relate directly to the conduct giving rise to the sanction and may not be excessive. Key considerations in imposing a remedy are the level of culpability of the spoliating party and the degree of prejudice, if any, suffered by the nonspoliating party.

*HN2* While the spectrum of remedies that may be imposed range from an award of attorney's fees to the dismissal of the lawsuit, the harsh remedy of a spoliation instruction is warranted only when the trial court finds that the spoliating party acted with the specific intent of concealing discoverable evidence, and that a less severe remedy would be insufficient to reduce the prejudice caused by the spoliation. This intent requirement is congruent with the presumption underlying a spoliation instruction—that the evidence would have hurt the wrongdoer. A failure to preserve evidence with a negligent mental state may only **[**5]** underlie a spoliation instruction in the rare situation in which a nonspoliating party has been irreparably deprived of any meaningful ability to present a claim or defense.

In the underlying slip-and-fall premises-liability case, we are asked to determine whether the trial court erred in charging the jury with a spoliation instruction when a premises owner retained the requested portion of surveillance video footage of the plaintiff's fall, but allowed additional footage to be automatically erased. Applying the standard enunciated today, we hold that imposition of the severe sanction of a spoliation instruction was an abuse of discretion. We need not address

the propriety of a particular lesser sanction because none was requested or imposed. We further hold that the trial court erred in admitting evidence of the circumstances of the spoliating conduct. Because these errors were not harmless, we reverse the court of appeals' judgment and remand the case for a new trial in accordance with this opinion.

[*15] **I. Background**

On September 2, 2004, Jerry Aldridge slipped and fell near a display table at a Brookshire Brothers grocery store. At the time of the fall, Aldridge did not tell store employees [**6] that he was injured, and the store did not investigate the fall or complete an incident report. However, about an hour-and-a-half after leaving the store, Aldridge went to the emergency room because of pain. On September 7, Aldridge returned to the store and reported his injuries. Jon Tyler, a store manager trainee, prepared an incident report based on Aldridge's statements and the recollections of the assistant manager who was on duty at the time of Aldridge's fall. The incident report stated that "Aldridge slipped on grease that had leaked out of a container by the 'Grab N Go.'" The Grab-NGo, which featured rotisserie chickens that were cooked and packaged in the store's deli, was located approximately fifteen feet from the area of the fall.

Aldridge's fall was captured by a surveillance camera mounted near the check-out counters. Because of the camera's placement, the floor where Aldridge fell was in the background and was obscured by a display table, which was covered with a cloth that extended to the floor. At the time of the fall, the cameras recorded surveillance video in a continuous loop that, after approximately thirty days, recorded over prior events. After Aldridge reported [**7] his injuries to Brookshire Brothers, Robert Gilmer, Brookshire Brothers' Vice President of Human Resources and Risk Management, decided to retain and copy approximately eight minutes of the video, starting just before Aldridge entered the store and concluding shortly after his fall.

Aldridge learned that Brookshire Brothers possessed video footage of the incident and, on September 13, asked the claims department for a copy so he could see his fall. Gilmer testified that he instructed the claims department not to provide the tape to Aldridge, as Gilmer believed it would be improper. The claims department wrote Aldridge a letter on September 29 stating that there was only one copy of the video at that time and that it therefore could not provide him with a copy. The camera presumably recorded over the September 2 footage by early October.

Brookshire Brothers initially paid Aldridge's medical expenses,[1] but ceased paying by June 2005, when Gilmer wrote Aldridge a letter stating that he had reviewed the video and determined that Brookshire Brothers was going to deny responsibility. In August 2005, Aldridge's attorney sent Brookshire Brothers a letter requesting approximately two-and-a-half [**8] hours of additional footage from the store cameras. Brookshire Brothers was unable to comply with that request because the footage had been recorded over almost a year earlier.

Aldridge sued Brookshire Brothers, claiming injuries from a slip and fall under a premises-liability theory. *HN3* To recover in a slip-and-fall case, a plaintiff must prove, *inter alia*, that the defendant had actual or constructive knowledge of a dangerous condition on the premises such as a slippery substance on the floor, *Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992)*, which may be accomplished with a showing that "(1) the defendant placed the substance on the floor, (2) the [*16] defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it," *Wal-Mart Stores, Inc. v. Reece, 81 S.W.3d 812, 814 (Tex. 2002)*. [**9] Aldridge argued in the trial court that Brookshire Brothers' failure to preserve additional video footage amounted to spoliation of evidence that would have been helpful to the key issue of whether the spill was on the floor long enough to give Brookshire Brothers a reasonable opportunity to discover it. Aldridge accordingly moved for a spoliation jury instruction.

The trial court allowed the jury to hear evidence bearing on whether Brookshire Brothers spoliated the video, submitted a spoliation instruction to the jury, and permitted the jury to decide whether spoliation occurred during its deliberations on

---

[1] With respect to customers injured in its store, Brookshire Brothers had a routine practice of paying an initial medical bill as well as paying for one follow-up visit and associated prescriptions. As to Aldridge, Brookshire Brothers also authorized payment for a visit to a neurosurgeon and several weeks of physical therapy.

the merits of the lawsuit. The principal witness to testify on the circumstances surrounding the preservation of the video was Gilmer, who had made the decision regarding the amount of video footage to preserve after Aldridge's incident report was completed. Gilmer testified at trial that he had instructed Tyler to save the portion showing the fall and the five or six minutes before the fall so as to try to identify Aldridge entering the store. He further testified that the purpose of saving the video was to verify that Aldridge had actually fallen and that Gilmer believed the rest **[**10]** of the video, which he had not viewed, ″[w]asn't relevant.″ Gilmer verified his understanding that a key legal issue in a slip-and-fall case is whether store employees knew or should have known there was something on the floor that caused the fall.[2] However, he maintained that when the decision was made to preserve the video he ″didn't know there was going to be a case.″ At that time, ″[i]t was just a man who made a claim that he slipped and fell in the store,″ and the actions relating to the video were not taken ″in anticipation of this trial.″

The trial court submitted the following spoliation instruction to the jury:

In this case, Brookshire Brothers permitted its video surveillance system to record over certain portions of the store surveillance video of the day of the occurrence in question. If you find that Brookshire Brothers knew or reasonably should have known that such portions of the store video not preserved contained **[**11]** relevant evidence to the issues in this case, and its non-preservation has not been satisfactorily explained, then you are instructed that you may consider such evidence would have been unfavorable to Brookshire Brothers.

The jury determined that Brookshire Brothers' negligence proximately caused Aldridge's fall and awarded Aldridge $1,063,664.99 in damages. The court of appeals affirmed the trial court's judgment on the verdict, holding that the trial court did not abuse its discretion in admitting evidence of spoliation or charging the jury with the spoliation instruction.

## II. Spoliation Analysis

*HN4* The spoliation of evidence is a serious issue. A party's failure to reasonably preserve discoverable evidence may significantly hamper the nonspoliating party's ability to present its claims or defenses, *Wal-Mart Stores, Inc. v. Johnson, 106 S.W.3d 718, 721 (Tex. 2003)*, and can ″undermine **[*17]** the truth-seeking function of the judicial system and the adjudicatory process,″ Justice Rebecca Simmons and Michael J. Ritter, *Texas's Spoliation ″Presumption″*, *43 ST. MARY'S L.J. 691, 701 (2012)*; *see also Trevino v. Ortega, 969 S.W.2d 950, 954 (Tex. 1998)* (Baker, J., concurring) (observing that ″[e]vidence **[**12]** spoliation is a serious problem that can have a devastating effect on the administration of justice″). As one federal district court has explained, ″[d]ocuments create a paper reality we call proof. The absence of such documentary proof may stymie the search for the truth.″ *Zubulake v. UBS Warburg L.L.C., 220 F.R.D. 212, 214 (S.D.N.Y. 2003)* (citations and internal quotation marks omitted). In some circumstances, a missing piece of evidence like a photograph or video can be irreplaceable. Testimony as to what the lost or destroyed evidence might have shown will not always restore the nonspoliating party to an approximation of its position if the evidence were available; sometimes a picture is indeed worth a thousand words.

In light of these concerns, *HN5* courts have broad discretion to utilize a variety of remedies to address spoliation, including the spoliation instruction. *See* Andrew Hebl, *Spoliation of Electronically Stored Information, Good Faith, and Rule 37(e)*, *29 N. ILL. U. L. REV. 79, 86 (2008)*. The instruction is an important remedy, but its use can affect the fundamental fairness of the trial in ways as troubling as the spoliating conduct itself. As we have recognized, ″[b]ecause **[**13]** the instruction itself is given to compensate for the absence of evidence that a party had a duty to preserve, its very purpose is to 'nudge' or 'tilt' the jury″ toward a finding adverse to the alleged spoliator. *Wal-Mart Stores, 106 S.W.3d at 724*. Thus, an unfortunate consequence of submitting a spoliation instruction is that it ″often ends litigation″ because ″it is too difficult a hurdle for the spoliator to overcome.″ *Zubulake, 220 F.R.D. at 219*. This ″nudging″ or ″tilting″ of the jury is magnified by the presentation of evidence that emphasizes the spoliator's wrongful conduct rather than the merits of the suit.

Added to these concerns are the complexities surrounding evidence preservation in today's world, as technology has advanced to allow potential litigants to store larger volumes of electronic information. *See* Simmons and Ritter, *Texas's*

---

[2]   Gilmer testified that he had worked in the grocery store business for forty-four years. As Vice President of Human Resources and Risk Management, Gilmer headed Brookshire Brothers' risk management department, which included managing the company's litigation.

*Spoliation "Presumption"*, 43 ST. MARY'S L.J. at 701. Thus, while electronic data can be a valuable source of evidence, it can also make compliance with one's responsibility to preserve and produce such data much more difficult and expensive. *See* id. at 702; Robert Hardaway, et al., *E-Discovery's Threat to Civil Litigation: Reevaluating Rule 26* [**14] *for the Digital Age*, 63 RUTGERS L. REV. 521, 522 (2011). *HN6* Because of the prevalence of discoverable electronic data and the uncertainties associated with preserving that data, sanctions concerning the spoliation of electronic information have reached an all-time high. Dan H. Willoughby, Jr., et al., *Sanctions for E-Discovery Violations: By the Numbers*, 60 DUKE L.J. 789, 790 (2010).

Because of these and other myriad concerns, *HN7* the Federal Rules of Civil Procedure were amended in 2006 to prohibit federal courts from imposing sanctions when discoverable electronic evidence is lost "as a result of the routine, good-faith operation of an electronic information system." FED. R. CIV. P. 37(e).[3] The Texas [*18] rules do not contain a comparable provision, but the challenges facing Texas courts are just as acute. Merits determinations are significantly affected by both spoliation instructions and the conduct that gives rise to them. We have observed that when a party is inherently prevented from having the merits of its case adjudicated, constitutional due process is implicated. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917-18 (Tex. 1991) (discussing constitutional limitations on the [**15] power of courts to adjudicate a party's claims without regard to the merits, but instead based on a party's conduct in discovery). In light of these concerns, we granted review of Brookshire Brothers' petition in order to bring much-needed clarity to our state's spoliation jurisprudence.

## A. Development of Spoliation Law in Texas

*HN8* In Texas, spoliation is an evidentiary concept rather than a separate cause of action. Trevino, 969 S.W.2d at 952. In declining to recognize [**16] spoliation as an independent tort in *Trevino*, we acknowledged that courts must have "adequate measures to ensure that it does not improperly impair a litigant's rights." Id. at 953. Thus, when evidence is lost, altered, or destroyed, trial courts have the discretion to impose an appropriate remedy so that the parties are restored to a rough approximation of what their positions would have been were the evidence available. Wal-Mart Stores, 106 S.W.3d at 721. As discussed further below, Texas courts necessarily enjoy wide latitude in remedying acts of discovery abuse, including evidence spoliation. Trevino, 969 S.W.2d at 953.

*HN9* Neither the Texas Rules of Evidence nor the Texas Rules of Civil Procedure specifically address spoliation. However, this Court recognized the concept as early as 1852, when we adopted the principle that all things are presumed against the wrongdoer; this is known as the spoliation presumption. *See* Cheatham v. Riddle, 8 Tex. 162, 167 (1852) (citation omitted) (stating that "[e]verything is to be presumed *in odium spoliatoris*"); *see also* Trevino, 969 S.W.2d at 952 (observing that "[e]vidence spoliation is not a new concept" and that "all things are presumed against [**17] a wrongdoer"). However, our guidance in this area has been limited to a small spattering of cases in the nineteenth century[4] and several more in the last twenty years.[5]

---

[3] **Rule 37(e)** is in the process of being amended again. Following the receipt of public comment, the Advisory Committee on Civil Rules recommended a proposed amended rule for adoption by the Committee on Rules of Practice and Procedure. See Hon. David G. Campbell, Advisory Committee on Civil Rules, *Report of Advisory Committee on Civil Rules*, 306-17 (May 2, 2014), http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Agenda%20Books/Standing/ST2014-05.pdf#pagemode=bookmarks. The Standing Committee approved the proposal at its May 29, 2014 meeting. Thomas Y. Allman, *Standing Committee OKs Federal Discovery Amendments*, LAW TECHNOLOGY NEWS (June 2, 2014), http://www.lawtechnologynews.com/id=1202657565227?slreturn=20140505130019.

[4] *See* Curtis & Co. Mfg. v. Douglas, 79 Tex. 167, 15 S.W. 154, 155 (Tex. 1890) (noting that nonpreservation of evidence was "a circumstance to be considered by the jury"); Underwood v. Coolgrove, 59 Tex. 164, 170 (1883) (recognizing that the refusal to produce evidence in a party's possession without explanation as to why it was not produced creates the belief that it would not aid the case of the nonproducing party); Cheatham, 8 Tex. at 162.

[5] *See* Trevino, 969 S.W.2d at 952 (refusing to recognize an independent tort of spoliation); Wal-Mart Stores, 106 S.W.3d at 722 (concluding that a party must possess a duty to preserve evidence in order for a spoliation instruction to be proper); *see also* Cire v. Cummings, 134 S.W.3d 835, 841 (Tex. 2004) (holding that party's "deliberate[]" destruction of relevant evidence justified death-penalty sanctions).

**HN10** The courts of appeals have generally followed two basic frameworks in evaluating the propriety of a spoliation remedy. **[\*19]** The first is that established by Justice Baker's oft-cited concurring opinion **[\*\*18]** in *Trevino v. Ortega*. Under this analytical framework, a party may be entitled to a remedy for the opposing party's spoliation of evidence if the party establishes three elements: (1) the party who destroyed or failed to produce evidence had a duty to preserve it; (2) the party either negligently or intentionally breached that duty by destroying the evidence or rendering it unavailable; and (3) the breach prejudiced the nonspoliating party. *Trevino, 969 S.W.2d at 955-58* (Baker, J., concurring). In evaluating prejudice, Justice Baker suggested that courts should consider the destroyed evidence's relevance, whether other cumulative evidence exists to take the place of the spoliated evidence, and whether the destroyed evidence supports ″key issues in the case.″ *Id. at 958*.

**HN11** The second distinct framework applied by the courts of appeals focuses on the so-called presumptions arising from a party's destruction of or failure to produce evidence. As we recognized in *Wal-Mart Stores*, the courts of appeals have generally limited the use of a spoliation instruction to two circumstances (generally referred to as the ″two rules″): (1) a party's deliberate destruction of relevant evidence, and (2) **[\*\*19]** a party's failure to produce relevant evidence or explain its nonproduction. *106 S.W.3d at 721*. Under the first rule, a presumption arises that a party who deliberately destroys evidence does so because it is unfavorable to the party's case. *Id*. Under the second, the same presumption arises because the party who controls the missing evidence is unable to explain its failure to produce the evidence. *Id. at 722*.[6] Though we have never expressly adopted these two rules, both derive from our nineteenth-century precedent. *See Cheatham, 8 Tex. at 167* (recognizing that all things are presumed against a wrongdoer); *Underwood, 59 Tex. at 170* (observing that a failure to produce evidence without explanation creates a belief that it would not aid the nonproducing party's case). Some courts of appeals have referred solely to the two rules in determining the propriety of a spoliation instruction, *see, e.g., Brumfield v. Exxon Corp., 63 S.W.3d 912, 920 (Tex. App.—Houston [14th Dist.] 2002, pet. denied)*, while others—including the court of appeals in the instant case—have referred to both Justice Baker's framework and the two rules in determining whether the trial court abused its discretion in charging **[\*\*20]** the jury with a spoliation instruction, __S.W.3d __, __; *see also Doe v. Mobile Video Tapes, Inc., 43 S.W.3d 40, 56 (Tex. App.—Corpus Christi 2001, no pet.)*; *Whiteside v. Watson, 12 S.W.3d 614, 621 (Tex. App.—Eastland 2000, pet. dism'd by agr.)*.

**B. Spoliation Framework**

Because we have never crafted a complete analytical framework for determining whether an act of spoliation has occurred, we first focus on the elements that must be satisfied to warrant a finding of spoliation and the corresponding imposition of an appropriate remedy. As an initial matter, however, we address whether it is the responsibility of the trial court or the jury to make this determination.

**1. The Trial Court Determines Whether Evidence Was Spoliated and the Proper Remedy**

As discussed above, **HN12** spoliation is an evidentiary **[\*\*21]** concept, not a separate cause **[\*20]** of action. *See Trevino, 969 S.W.2d at 952*. It is well-established that evidentiary matters are resolved by the trial court. *See, e.g., City of San Antonio v. Pollock, 284 S.W.3d 809, 823 (Tex. 2009)*. Further, spoliation is essentially a particularized form of discovery abuse, in that it ultimately results in the failure to produce discoverable evidence, and discovery matters are also within the sole province of the trial court. Finally, presenting spoliation issues to the jury for resolution magnifies the concern that the focus of the trial will shift from the merits to a party's spoliating conduct. For these reasons, we agree with Justice Baker that the trial court, rather than the jury, must determine whether a party spoliated evidence and, if so, impose the appropriate remedy. *See Trevino, 969 S.W.2d at 954* (Baker, J., concurring); *see also Massie v. Hutcheson, 270 S.W. 544, 545 (Tex. Comm'n App. 1925, holding approved)* (stating that determining whether a party intentionally destroyed evidence is a preliminary question for the court to decide). The trial court may hold an evidentiary hearing to assist the court in making spoliation findings, but not **[\*\*22]** in the presence of the jury. Placing the responsibility on the trial court to make spoliation findings and to determine the proper remedy is a key mechanism in ensuring the jury's focus stays where it belongs—on the merits.

---

[6] The Texas spoliation presumption is a confusing concept that has not been uniformly applied. *See generally* Justice Rebecca Simmons and Michael J. Ritter, *Texas's Spoliation ″Presumption″*, 43 ST. MARY'S L.J. 691 (2012). In Texas, courts usually use the term ″presumption,″ while federal courts generally refer to a spoliation instruction as an ″adverse inference″ instruction. *See id. at 716, 769*.

## 2. Spoliation Finding

With this background in mind, we turn to the elements that underlie a trial court's spoliation finding, beginning with the issue of duty. We have held that *HN13* a party alleging spoliation bears the burden of establishing that the nonproducing party had a duty to preserve the evidence. *See Wal-Mart Stores, 106 S.W.3d at 722*. The standard governing the duty to preserve resolves two related inquiries: when the duty is triggered, and the scope of that duty. Specifically, we observed in *Wal-Mart Stores* that "[s]uch a duty arises only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim." *Id*. In turn, a "substantial chance of litigation" arises when "litigation is more than merely an abstract possibility or unwarranted fear." *National Tank Co. v. Brotherton, 851 S.W.2d 193, 204 (Tex. 1993)* (citation and internal **[**23]** quotation marks omitted); *see also id*. ("Common sense dictates that a party may reasonably anticipate suit being filed . . . before the plaintiff manifests an intent to sue.").[7]

Second, we have implicitly recognized, and now do so explicitly, that *HN14* the party seeking a remedy for spoliation must demonstrate that the other party breached its duty to preserve material and relevant evidence. *See Wal-Mart Stores, 106 S.W.3d at 722* (observing that the initial inquiry in determining if discovery abuse has occurred is whether a party has a duty to preserve evidence). If a party possesses a duty to preserve evidence, it is inherent that a party breaches that duty by failing to exercise reasonable care to do so. Otherwise, the nonspoliating party **[**24]** would have no legitimate reason to seek a spoliation remedy. Further, we agree with Justice Baker that the breach may be either intentional or negligent. *Trevino, 969 S.W.2d at 957* (Baker, J., concurring) ("Because **[*21]** parties have a duty to reasonably preserve evidence, it is only logical that they should be held accountable for either negligent or intentional spoliation.").[8]

## 3. Spoliation Remedies

*HN16* After a court determines that a party has spoliated evidence by breaching its duty to preserve such evidence, it may impose an appropriate remedy. *Rule 215.2 of the Texas Rules of Civil Procedure* enumerates a wide array of remedies available **[**25]** to a trial court in addressing discovery abuse, such as an award of attorney's fees or costs to the harmed party, exclusion of evidence, striking a party's pleadings, or even dismissing a party's claims. *See Tex. R. Civ. P. 215.2-.3*. These remedies are available in the spoliation context. *Trevino, 969 S.W.2d at 953*. The trial court also has discretion to craft other remedies it deems appropriate in light of the particular facts of an individual case, including the submission of a spoliation instruction to the jury. *Id*.

*HN17* In accordance with our well-settled precedent on remedying discovery abuse, however, the remedy must have a direct relationship to the act of spoliation and may not be excessive. *See TransAmerican, 811 S.W.2d at 917*. In other words, the remedy crafted by the trial court must be proportionate when weighing the culpability of the spoliating party and the prejudice to the nonspoliating party. *See Schmid v. Milwaukee Elec. Tool Corp*., 13 F.3d 76, 79 (3d Cir. 1994) (in crafting a remedy for spoliation, assessing (1) the degree of fault of party who failed to preserve evidence, (2) the degree of prejudice suffered by the opposing party, and (3) whether there is a lesser sanction **[**26]** that will avoid substantial unfairness to the opposing party); Maria Perez Crist, *Preserving the Duty to Preserve: The Increasing Vulnerability of Electronic Information*, 58 S.C. L. Rev. 7, 44 (2006) (noting that federal courts generally follow the three-part test outlined in *Schmid* in determining the appropriate sanction for spoliation). This logically follows from the remedial purpose undergirding the imposition of a spoliation remedy under Texas law, which is to restore the parties to a rough approximation of their positions if all evidence were available. *See Wal-Mart Stores, 106 S.W.3d at 721*.

---

[7] Federal courts have struggled with the issue of when a duty to preserve is triggered and the scope of that duty, especially as it relates to electronic data and "litigation holds." *See generally* Paul W. Grimm, et al., *Proportionality in the Post-Hoc Analysis of Pre-Litigation Preservation Decisions*, 37 U. Balt. L. Rev. 381 (2008) (discussing the perplexing issue in federal courts of the duty to preserve as it relates to electronically stored information).

[8] It follows that *HN15* a party does not breach its duty to preserve relevant evidence if such evidence is lost or destroyed through no fault of the party from whom the evidence is sought, such as by an act of God. Given that spoliation sanctions, while primarily remedial, also serve a punitive purpose, they are not appropriately imposed against an innocent party, regardless of the extent to which another party is prejudiced. *See Trevino, 969 S.W.2d at 957* (Baker, J., concurring) (comparing the "culpable" spoliating party with the "innocent" nonspoliating party).

**HN18** The courts of appeals evaluate prejudice largely on the considerations Justice Baker espoused in his *Trevino* concurrence.[9] These include the relevance of the spoliated evidence to key issues in the case, the harmful effect of the evidence on the spoliating party's case (or, conversely, whether the evidence would have been helpful to the nonspoliating party's case), and whether the spoliated evidence was cumulative of other competent evidence that may be used instead of the spoliated **[*22]** evidence. *Trevino, 969 S.W.2d at 958* (Baker, J., concurring); *see, e.g., Offshore Pipelines, Inc. v. Schooley, 984 S.W.2d 654, 666 (Tex. App.—Houston [1st Dist.] 1998, no pet.)*. **[**27]** These factors have proved workable in the courts of appeals, are similar to the test followed by federal courts, and provide guidance to the trial courts in analyzing prejudice in a specific case. *See, e.g., Rimkus Consulting Group, Inc. v. Cammarata, 688 F. Supp. 2d 598, 615-16 (S.D. Tex. 2010)* (discussing the prejudice factor of adverse inference analysis). Accordingly, we adopt them.

**HN19** In light of the difficulty of conducting a prejudice analysis based on evidence that is no longer available for review, we recognize that a party's intentional destruction of evidence[10] may, "[a]bsent evidence to the contrary," be sufficient by itself to support a finding that the spoliated evidence is both relevant and harmful to the spoliating party. *See Trevino, 969 S.W.2d at 958* **[**28]** (Baker, J., concurring). This flows from the common-law spoliation presumption that all things are presumed against the wrongdoer.[11] Conversely, negligent spoliation could not be enough to support such a finding without "some proof about what the destroyed evidence would show."[12] *Id.* In any event, the trial court should of course consider all evidence bearing on the factors associated with evaluating prejudice to the nonspoliating party. *Id.*

We note, however, that **HN20** a trial court should exercise caution in evaluating the final prejudice factor, which accounts for the existence of cumulative evidence. For example, a spoliating party might argue that no prejudice resulted from spoliation of a video of an incident because there is also eyewitness testimony regarding the incident. But many of the inherent problems with such testimony—inaccurate memory, poor eyesight, bias, etc.—are simply not present with a video recording. Again, a picture is often worth a thousand words. The same can be true with respect to testimony regarding the contents of a destroyed document, compared to the document itself. The differences in kind and quality between the available evidence and the spoliated evidence will thus be a key factor in analyzing prejudice to the nonspoliating party.

## C. Spoliation Instruction as a Remedy

Having laid out the general framework governing spoliation findings and remedies, we turn to the particular remedy at issue in this case—the submission of an instruction to the jury to presume that the missing evidence would have been unfavorable to the spoliator. **[**30] HN21** Though we have generally described the purpose of a spoliation remedy in remedial rather than punitive terms, *see Wal-Mart Stores, 106 S.W.3d at 721*, a spoliation instruction is still inherently a sanction, **[*23]** *see Trevino, 969 S.W.2d at 953*.[13] Further, it is among the harshest sanctions a trial court may utilize to remedy an act of spoliation. *See, e.g., Zubulake, 220 F.R.D. at 220* (describing a spoliation instruction as "an extreme sanction" that "should not be given lightly"); *Rimkus Consulting Group, Inc., 688 F. Supp. 2d at 619* (characterizing a spoliation instruction "as among the most severe sanctions a court can administer"). Because a spoliation instruction has the propensity to tilt a trial

---

[9]   Justice Baker opined that prejudice should be analyzed both as a yes-or-no element of spoliation and as a factor in imposing a remedy. *Trevino, 969 S.W.2d at 955-58* (Baker, J., concurring). We think this two-step analysis is unnecessary and that analyzing prejudice as a key factor in imposing a spoliation remedy contemplates that some degree of prejudice is required for the nonspoliating party to be entitled to a remedy.

[10]   We discuss in detail below what is required to demonstrate that a party "intentionally" spoliated evidence.

[11]   Some federal courts endorse this viewpoint as well. *See, e.g., Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 109 (2d Cir. 2002)*.

[12]   This does not mean that the contents of the missing evidence must be conclusively proven, as they can be demonstrated through circumstantial evidence. *See, e.g., Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 110 (2d Cir. 2001)* (observing that "a party seeking an adverse inference may rely on circumstantial evidence to suggest the contents of destroyed evidence"); *Reece, 81 S.W.3d at 817* (noting that circumstantial evidence may establish a fact when that fact is "inferred from other facts **[**29]** proved in the case") (citation and internal quotation marks omitted).

[13]   *See also, e.g., Beaven v. U.S. Dep't of Justice, 622 F.3d 540, 553 (6th Cir. 2010)* (describing an adverse inference instruction as a sanction); *Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 449 (4th Cir. 2004)* (same).

in favor of a nonspoliating party, it can, in some sense, be tantamount to a death-penalty sanction. *See Wal-Mart Stores, 106 S.W.3d at 724*; *TransAmerican, 811 S.W.2d at 917-18*; *Zubulake, 220 F.R.D. at 219-20*. At the same time, the destruction of relevant evidence can also unfairly skew the outcome of a trial. Thus, improper use of a spoliation instruction can deprive either party of the right to a fair trial on the merits of the case. It follows that an instruction should be available to [**31] address spoliation in certain circumstances, but should be used cautiously. *See TransAmerican, 811 S.W.2d at 917*.

**1. Culpability**

The competing considerations outlined above have led courts to grapple with the specific issue of whether a spoliation instruction can ever be an appropriate remedy for negligent spoliation. Though the issue has split both federal and state courts,[14] there has been little discussion of this issue in our courts of appeals,[15] and we previously left open the question of the requisite culpable mental state to warrant submission of a spoliation instruction. *See Wal-Mart Stores, 106 S.W.3d at 722* (declining to decide whether a spoliation instruction is justified when evidence is unintentionally lost or destroyed).

For several reasons, and with a narrow exception we will explain below, we conclude that *HN22* a party must intentionally spoliate evidence in order for a spoliation instruction to constitute an appropriate remedy. Although some Texas courts of appeals have approved spoliation instructions on the basis of negligent spoliation, this approach lacks a basis in Texas common law. *See, e.g., Adobe Land Corp. v. Griffin, L.L.C., 236 S.W.3d 351, 360-61 (Tex. App.—Fort Worth 2007, pet. denied)*. First, we have expressly stated that a spoliation instruction may be given when a party *deliberately* destroys evidence. *Cire, 134 S.W.3d at 843*. Second, a person who merely negligently destroys evidence lacks the state of mind of a "wrongdoer," and it makes little sense to infer that a party who only negligently lost or destroyed evidence did so because it was unfavorable to the party's case. Courts that allow a negligent state of mind to warrant the submission of a spoliation instruction tend to reason that the need to deter and punish spoliation is a sufficient basis for the instruction. *See* Koesel and Turnbull, *Spoliation of Evidence: Sanctions and Remedies for Destruction of Evidence in Civil Litigation*, at 65-66. [**33] However, in Texas, the instruction is based on the presumption of wrongdoing, so it follows that the more appropriate requirement [*24] is intent to conceal or destroy discoverable evidence.

Our analysis of *Rule 215* discovery sanctions in *TransAmerican* and its progeny, in which we held that *HN23* there must be a direct relationship between the offensive conduct and the sanction imposed, and that the sanction may not be excessive, also compels our conclusion. *TransAmerican, 811 S.W.2d at 917*. As we observed, "sanctions that are so severe as to inhibit presentation of the merits of a case should be reserved to address a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *Spohn Hosp. v. Mayer, 104 S.W.3d 878, 883 (Tex. 2003)*. Though *TransAmerican* specifically interpreted a requirement in *Rule 215* that any sanction imposed be "just," the spirit of its analysis applies equally in the context of spoliation instructions. *See TransAmerican, 811 S.W.2d at 917*. To allow such a severe sanction as a matter of course when a party has only negligently destroyed evidence is neither just nor proportionate. *Id.*

Finally, our approach aligns with a majority [**34] of the federal courts of appeals. *See United States v. Laurent, 607 F.3d 895, 902-03 (1st Cir. 2010)* (requiring bad faith for adverse inference instruction); *Henning v. Union Pac. R.R. Co., 530 F.3d 1206, 1219-20 (10th Cir. 2008)* (intentionality or bad faith necessary for spoliation instruction); *Faas v. Sears, Roebuck & Co., 532 F.3d 633, 644 (7th Cir. 2008)* (spoliator must intentionally destroy evidence in bad faith to warrant adverse inference instruction); *Greyhound Lines, Inc. v. Wade, 485 F.3d 1032, 1035 (8th Cir. 2007)* (observing that a spoliation sanction requires a finding of intentional destruction that indicates a desire to suppress the truth); *Hodge, 360 F.3d at 450* (adverse inference instruction is only available when the spoliating party knew the evidence was relevant to an issue at trial and his willful conduct resulted in the evidence's loss or destruction); *King v. Ill. Cent. R.R., 337 F.3d 550, 556 (5th Cir. 2003)* (nonspoliating party must show that spoliating party destroyed evidence in bad faith to establish entitlement to an adverse inference); *Penalty Kick Mgmt. Ltd. v. Coca Cola Co., 318 F.3d 1284, 1294 (11th Cir. 2003)* (adverse inference

---

[14] *See* Margaret M. Koesel and Tracey L. Turnbull, *Spoliation of Evidence: Sanctions and Remedies for Destruction of Evidence in Civil Litigation* 64-65 (Daniel F. Gourash ed., 2d ed. 2006).

[15] *See* Simmons and Ritter, *Texas's Spoliation "Presumption"*, [**32] 43 St. Mary's L.J. at 757.

may only be drawn when **[\*\*35]** the failure to preserve evidence is done in bad faith).[16] We believe this approach is consistent with our jurisprudence and is the most practical in this era of complex electronic discovery.

Because of the significant consequences stemming from a finding that spoliation is intentional, further discussion of the meaning of "intentional" in this context is warranted. **HN24** By "intentional" spoliation, often referenced as "bad faith" or "willful" spoliation, we mean that the party acted with the subjective purpose of concealing or destroying discoverable evidence. This includes the concept of "willful blindness," which encompasses the scenario in which a party does not directly destroy evidence known to be relevant and discoverable, but nonetheless "allows for its destruction."[17] **[\*25]** Hebl, *Spoliation of Electronically Stored Information, Good Faith, and Rule 37(e)*, 29 N. Ill. U. L. Rev. at 97-98.

Accordingly, we hold that **HN26** a trial court's finding of intentional spoliation pursuant to the analysis set forth above is a necessary predicate to the proper submission of a spoliation instruction to the jury. In the event the trial court makes such a finding and concludes, as with any sanction, that a lesser remedy would be insufficient to ameliorate the prejudice caused by the spoliating party's conduct, the trial court is within its discretion in submitting an instruction. *See TransAmerican, 811 S.W.2d at 917* (holding that, because a discovery sanction "should be no more severe than necessary to satisfy its legitimate purposes," the trial court must determine that lesser sanctions constitute an insufficient remedy); *Cire, 134 S.W.3d at 842* (holding that the trial court "must analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed").

**2. Caveat Authorizing Instruction in Context of Negligent Spoliation**

Our conclusion regarding the requisite **[\*\*38]** state of mind to justify a jury instruction, however, must include a narrow caveat. **HN27** On rare occasions, a situation may arise in which a party's negligent breach of its duty to reasonably preserve evidence irreparably prevents the nonspoliating party from having any meaningful opportunity to present a claim or defense. *See Wal-Mart Stores, 106 S.W.3d at 721* (recognizing that "the loss or destruction of evidence may seriously impair a party's ability to present its case"). In such circumstances, the destruction or loss of the evidence, regardless of motive, could completely subvert the factfinder's ability to ascertain the truth.

The United States Court of Appeals for the Fourth Circuit has explained in detail the rationale for occasionally imposing a severe sanction—in that case, dismissal—when evidence is negligently destroyed. In *Silvestri v. General Motors Corp.*, evidence spoliation deprived General Motors of the only available evidence from which it could develop its defenses. *271 F.3d 583, 594 (4th Cir. 2001).*[18] The court recognized that, although negligence is generally an insufficient level of culpability to warrant a severe spoliation sanction like an instruction, such a remedy **[\*\*39]** may nevertheless be justified if the prejudice to a party is "extraordinary, denying it the ability to adequately defend its case." *Id. at 593.*

---

[16] *But see Beaven, 622 F.3d at 554* (adverse inference appropriate when a party destroys evidence knowingly or negligently); *Residential Funding Corp.*, 306 F.3d at 108 (same); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (spoliation instruction may be given when spoliator acts with less than bad faith).

[17] **HN25** The **[\*\*36]** issue of willful blindness is especially acute in the context of automatic electronic deletion systems. A party with control over one of these systems who intentionally allows relevant information to be erased can hardly be said to have only negligently destroyed evidence, though we recognize the complexities of these determinations when a potential litigant who controls massive volumes of electronic data is attempting to determine, prelitigation, which information is likely to be discoverable. *See, e.g.*, Hardaway, et al., *E-Discovery's Threat to Civil Litigation: Reevaluating Rule 26 for the Digital Age*, 63 Rutgers L. Rev. at 529 (discussing the "staggering costs" in discovery because of the volumes of electronically stored information in computers and other databases around the country); Wright, Note, *Federal Rule of Civil Procedure 37(e): Spoiling the Spoliation Doctrine*, 38 Hofstra L. Rev. 793, 806 (2009) (discussing the discovery problems when electronically stored information is routinely deleted from a business's computers, and the need for courts to remedy spoliation while also remembering that "[i]n a world where the very act of deletion is integral to normal operations, it **[\*\*37]** is unfair to treat the inadvertent or negligent loss of [ESI] as indicative of an intent to destroy evidence and to thereby infer spoliation") (citation and internal quotation marks omitted).

[18] In *Silvestri*, the plaintiff sued General Motors following a motor vehicle accident, alleging the air bag in the car he was driving had failed to deploy. 271 F.3d at 586. In anticipation of filing suit, the plaintiff's attorney hired experts to inspect the car and the crash site, but failed to notify General Motors of the accident for three years, by which time the car had been sold and repaired. *Id.* at 587.

Similarly, we do not believe **HN28** a spoliation instruction would be excessive if the **[*26]** act of spoliation, although merely negligent, so prejudices the nonspoliating party that it is irreparably deprived of having any meaningful ability to present a claim or defense. *See id*. We therefore conclude that, in this rare circumstance, a court should have the discretion to remedy such extreme and irreparable prejudice to the nonspoliating party with a spoliation instruction, even if the trial court determines that the evidence was only negligently lost or destroyed.

### D. Admission of Spoliation Evidence at Trial

**HN29** An issue that commonly arises when a party is **[**40]** accused of spoliation is the admissibility of evidence at trial relating to whether spoliation occurred and the culpability of the spoliating party. Under the Texas Rules of Evidence, admissible evidence must be relevant, which is defined as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Tex. R. Evid. 401*. Further, a trial court may exclude even relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." *Tex. R. Evid. 403*. The evidentiary issue presented here is whether evidence bearing solely on whether a party spoliated evidence or the party's degree of culpability in doing so relates to a "fact that is of consequence to the determination of the action." For the reasons set out below, we hold that it does not.

Our holding that **HN30** the trial court, not the jury, bears responsibility for making the required spoliation findings and imposing a remedy affects the propriety of admitting **[**41]** evidence regarding spoliation at trial. Again, when a party requests spoliation sanctions, the trial court decides whether the accused party owed and breached a duty to preserve relevant evidence, assesses the culpability level of the spoliator, evaluates the prejudice suffered by the nonspoliating party, and imposes a remedy. The evidence considered by the trial court in making these findings, however, often has no bearing on the facts that are "of consequence to the determination of the action" from the jury's perspective. *Tex. R. Evid. 401*. This lack of relevance is reinforced by our longstanding refusal to recognize spoliation as an independent cause of action. *Trevino, 969 S.W.2d at 952*. Further, the tendency of such evidence to skew the focus of the trial from the merits to the conduct of the spoliating party raises a significant risk of both prejudice and confusion of the issues.

That said, we recognize that **HN31** all references to missing evidence, whether lost due to a party's spoliation or missing for some other reason, cannot and should not be foreclosed. For example, to the extent permitted by the Texas Rules of Evidence, parties may present indirect evidence to attempt to prove **[**42]** the contents of missing evidence that is otherwise relevant to a claim or defense, such as a person's testimony about the content of a missing document, photo, or recording. *See Tex. R. Evid. 1002* (noting the general rule that an original writing, recording, or photograph is required to prove the content thereof); *see also, e.g.*, *Tex. R. Evid. 1004(a)* (noting an exception to the general rule when the originals are lost or destroyed, "unless the proponent lost or destroyed them in bad faith"). However, there is no basis on which to allow the jury to hear evidence that is unrelated to the merits of the case, but serves only to highlight the spoliating party's breach and culpability. While such evidence may be central to the trial court's **[*27]** spoliation findings, it has no bearing on the issues to be resolved by the jury.

### III. Application

**HN32** We review a trial court's imposition of a spoliation remedy, including the submission of a spoliation instruction to the jury, for an abuse of discretion. *Wal-Mart Stores, 106 S.W.3d at 723*; *Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992)* (trial court's factual findings reviewed for abuse of discretion). We similarly evaluate the court's admission of **[**43]** evidence under an abuse-of-discretion standard. *U-Haul Int'l, Inc. v. Waldrip, 380 S.W.3d 118, 132 (Tex. 2012)*. The trial court in this case admitted evidence at trial regarding Brookshire Brothers' alleged spoliation of video footage and, as noted above, submitted the spoliation issue to the jury in the following instruction:

> In this case, Brookshire Brothers permitted its video surveillance system to record over certain portions of the store surveillance video of the day of the occurrence in question. If you find that Brookshire Brothers knew or reasonably should have known that such portions of the store video not preserved contained relevant evidence to the issues in this case, and its non-preservation has not been satisfactorily explained, then you are instructed that you may consider such evidence would have been unfavorable to Brookshire Brothers.

Under the analysis set forth herein, both the admission of such evidence and the submission of the instruction were improper.

Further, based on our review of the considerable amount of record evidence surrounding the spoliation issue, we hold that the submission of a spoliation instruction in any form was an abuse of discretion. Assuming [**44] without deciding that Brookshire Brothers had and breached a duty to reasonably preserve evidence by saving an insufficient amount of video footage before allowing the additional footage to be erased, prejudicing Aldridge, there is no evidence that it did so with the requisite intent to conceal or destroy relevant evidence or that Aldridge was irreparably deprived of any meaningful ability to present his claim.

Shortly after Aldridge reported his fall, Gilmer instructed an assistant manager to review video footage from the day of the fall and to preserve any footage showing the fall as well as several minutes before the fall. As a result, Brookshire Brothers saved footage that showed Aldridge entering the store and continued until approximately one minute after he fell. Gilmer testified that, when he made the decision regarding the amount of footage to save, he did not believe any additional footage would be relevant and did not anticipate a lawsuit. A few days after the incident, Aldridge requested video footage of "the fall," which had already been preserved, but did not request any other footage. Although Aldridge's attorney requested additional footage almost a year later, there [**45] is no evidence that such a request was made when that footage was still available.[19]

Tyler, the employee who copied the video, testified that he began watching the footage at the 5:00 p.m. time stamp, which corresponded with the approximate time of [*28] the incident,[20] and "played it from there." There is no evidence that a Brookshire Brothers employee viewed any additional footage from that day other than the eight preserved minutes. In turn, there is no indication that the decision regarding the amount of footage to save was based in any way on what the additional footage would have shown. Had Brookshire Brothers allowed *all* footage of the incident to be destroyed, the outcome might be different. But there is simply no evidence that Brookshire Brothers saved the amount of footage that it did in a [**46] purposeful effort to conceal relevant evidence. To the contrary, it is undisputed that Brookshire Brothers preserved exactly what it was asked to preserve—footage of the fall.[21]

Further, any prejudice to Aldridge resulting from Brookshire Brothers' failure to preserve additional video footage did not rise to the rare level required to justify an instruction in the absence of intentional spoliation. This narrow exception to the [**47] intent requirement is meant to address situations akin to those presented in *Silvestri*, in which the only available evidence from which General Motors could develop its defenses—the car in which an air bag allegedly failed to deploy—was irreparably altered before General Motors even had a chance to examine it. *See Silvestri, 271 F.3d at 594*. By contrast, in this case, even without the missing video footage, other evidence was available to Aldridge to prove the elements of his slip-and-fall claim.

Again, the portion of the video showing the fall, several minutes before the fall, and one minute after the fall was preserved and shown to the jury at trial. The video showed the activity around the area of the fall, including the actions of various store employees, during this period of time. Aldridge also presented Brookshire Brothers' incident report confirming its conclusion that Aldridge had slipped in grease that leaked out of a container by the Grab-N-Go, which was located near the area of the fall. Finally, Aldridge himself testified at length about the circumstances surrounding his fall. Based on all

[19]  We are in no way suggesting that parties may immunize themselves from the consequences of evidence spoliation by hiding behind unreasonable limited-duration retention policies. Our opinion today does not address the reasonableness of Brookshire Brothers' policy, which is not challenged. Rather, we review whether the amount of video footage Brookshire Brothers chose to preserve was sufficient.

[20]  The preserved video starts at 5:01 p.m. and ends at just before 5:09 p.m. It shows that Aldridge entered the store at about 5:02 p.m. and fell just before 5:08 p.m.

[21]  The dissent speculates about what the deleted video would have shown in concluding that Brookshire Brothers engaged in willful blindness. Minimizing the fact that the area of the fall was obscured by a table covered with a cloth that extended to the floor and the fact that the low quality of the video makes details very difficult to discern, the dissent would improperly assume, based on speculation rather than evidence, that Brookshire Brothers knew what the video would or even could have shown, particularly with respect to how long the substance was on the floor before Aldridge slipped and fell.

the available evidence, we hold that Brookshire Brothers' failure to preserve additional **[**48]** video footage did not irreparably deprive Aldridge of any meaningful ability to present his claim.

We therefore hold that the trial court abused its discretion in submitting a spoliation instruction. Further, the trial court erred in admitting evidence of the circumstances surrounding the failure to preserve additional video footage, though only to the extent such evidence was unrelated to the merits and served principally to highlight Brookshire Brothers' culpability. For example, nonspeculative testimony relating to what the missing video would have shown, such as the testimony about the cleanup, was not problematic. Further, because a portion of the video was preserved and presented at trial, some degree of questioning about the creation of the video was reasonably pursued as background **[*29]** for its introduction to the jury. However, testimony that is relevant only to the issues of whether Brookshire Brothers breached a duty to preserve evidence or acted with the requisite intent was improperly admitted.

*HN33* The trial court's error is reversible, however, only if it "probably caused the rendition of an improper judgment." *TEX. R. APP. P. 61.1(a)*; *see also Nissan Motor Co. v. Armstrong, 145 S.W.3d 131, 144 (Tex. 2004)* **[**49]** (in determining whether erroneous admission of evidence is harmful, "[w]e review the entire record, and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted"). In *Wal-Mart Stores*, we noted that "if a spoliation instruction should not have been given, the likelihood of harm from the erroneous instruction is substantial, particularly when the case is closely contested." *106 S.W.3d at 724*. Such a likelihood of harm existed in this case.

The instruction capped off a trial in which both liability and the extent of Aldridge's damages were closely contested and in which significant emphasis was placed on the spoliation issue. In opening and closing arguments, Aldridge's attorney accused Brookshire Brothers of destroying the tape, hiding evidence, and acting deceptively. Gilmer was questioned extensively about his motivation in preserving part of the video. The presentation of the spoliation issue to the jury also led the trial court to admit evidence regarding Brookshire Brothers' payment of a portion of Aldridge's medical expenses, even though such evidence was otherwise inadmissible. *TEX. R. EVID. 409*. Further, the preserved video footage **[**50]** suggests the highly speculative nature of a presumption that additional footage would have been harmful to Brookshire Brothers. The video is of poor quality, and the area of the fall is far from the camera and was obscured by a table covered with a cloth that extended to the floor. On this record, particularly when considered in conjunction with our holding in *Wal-Mart Stores* that *HN34* an improper spoliation instruction presents a substantial likelihood of harm, it is "very difficult to overlook the likely impact" of the spoliation evidence and the instruction. *Kia Motors Corp. v. Ruiz, 432 S.W.3d 865, 883-84, 2014 Tex. LEXIS 259, *51 (Tex. 2014)*. Accordingly, we hold that the trial court's error probably caused the rendition of an improper judgment, and we reverse the judgment of the court of appeals.

We note that this case highlights the need for guidelines and clarity in our spoliation jurisprudence, as the record reflects the significant effect that the spoliation allegations had on the course of this trial. Indeed, this case typifies the manner in which the focus of the trial can impermissibly shift from the merits of the case to the spoliating conduct when such guidance is missing. Because spoliation is not directly **[**51]** addressed in either our rules of evidence or our rules of procedure, courts must fill in the gaps to maintain the consistency and predictability that is basic to the rule of law in our society. The continued development of the State's common law, in which we engage today, is not only the province—but the responsibility—of this Court.

## IV. Legal Sufficiency Challenge

Finally, we address Brookshire Brothers' assertion that it is entitled to rendition of judgment in its favor on legal sufficiency grounds. Brookshire Brothers argues that, regardless of whether the spoliation instruction is taken into account, the evidence is legally insufficient to support the constructive notice element of Aldridge's claim. *HN35* One of the grounds on which we will uphold a legal sufficiency **[*30]** challenge is if "'the evidence offered to prove a vital fact is no more than a scintilla.'" *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp., 299 S.W.3d 106, 115 (Tex. 2009)* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Evidence does not exceed a scintilla if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists." *Id.* (citation **[**52]** and quotation marks omitted). In reviewing evidence in the context of a legal sufficiency challenge, "we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so." *Id.*

As is relevant here, to show Brookshire Brothers had constructive notice of the "condition" (*i.e.*, a slippery substance on the floor), Aldridge had to prove that "it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it." *Reece, 81 S.W.3d at 814*. **HN36** Temporal evidence is the best indicator of whether the owner could have discovered and remedied the condition. *Id. at 816*.

As noted above, the exact area of the floor where Aldridge fell was obscured by a table in the video footage that was preserved, but the video does not appear to show a spill or leak occurring during the seven minutes before the fall. Tyler testified that substances reasonably should not remain on the floor of the store for longer than five minutes without being noticed and cleaned up. The video showed store employees walking past the area approximately three minutes and five minutes **[**53]** before Aldridge fell. It also showed an employee signaling for help to clean up the spill right before the video ended, suggesting the spill was too large to be cleaned by paper towels. This evidence, even without the spoliation instruction, amounts to more than a scintilla favoring a finding that Brookshire Brothers had constructive notice of the condition.[22]

## V. Conclusion

We hold that the trial court abused its discretion in submitting a spoliation instruction because there is no evidence that Brookshire Brothers intentionally concealed or destroyed the video in question or that Aldridge was deprived of any meaningful ability to present his claim to the jury at trial. Accordingly, we reverse the court of appeals' judgment and remand the case to **[**54]** the trial court for a new trial in accordance with this opinion.

Debra H. Lehrmann

Justice

**Dissent by:** Eva M. Guzman

# Dissent

Courts exist as a mechanism for administering justice and arriving at truth. Spoliation, whether done negligently or intentionally, jeopardizes this essential function and cannot be condoned. Today, the Court articulates a spoliation framework that departs in significant ways from decades of spoliation jurisprudence as developed by our capable courts of appeals. In doing so, the Court places substantial limits on the trial court's discretion in crafting an appropriate remedy for acts of spoliation, **[*31]** and articulates a standard that, as applied by the Court, may permit the destruction of relevant evidence so long as it is—in name—done in accordance with a stated retention policy. Because I do not believe the Court's framework provides trial courts with the necessary discretion to appropriately remedy the wrongful destruction of evidence in an era where limited duration retention policies have become the norm, I respectfully dissent.

## I. Background

Jerry Aldridge slipped and fell while shopping at a Brookshire Brothers grocery store on September 2, 2004. Though initially unaware of the extent **[**55]** of his injury, Aldridge suffered a substantial spinal injury as a result of the fall. He sought medical attention later that day. On September 7, 2004, Aldridge returned to the store and reported his injuries to Jon Tyler, the store manager trainee on duty at the time. Tyler completed a customer incident report documenting Aldridge's fall.

Additionally, store surveillance cameras captured footage of the fall. After Aldridge reported the incident to Tyler, Robert Gilmer, the Vice President of Human Resources and Risk Management for Brookshire Brothers, instructed Tyler to view

---

[22] As we noted recently in *Kia Motors Corp.*, our review of the evidence in evaluating a legal sufficiency challenge is much narrower than our review in determining whether the trial court's error probably caused the rendition of an improper judgment. 432 S.W.3d at 883, 2014 Tex. LEXIS 259 at *51. Our holding that the evidence is legally sufficient to support the verdict is thus fully consistent with our determination that the trial court's spoliation errors were harmful.

the surveillance video. Despite notice of the accident and the availability of footage covering the entire day of Aldridge's fall, Gilmer chose to copy and save only an eight-minute segment of footage, beginning just before Aldridge entered the store and concluding just after his fall.

Although Aldridge had yet to file a lawsuit, he requested a copy of the footage of his fall on September 13—less than one week after reporting his injuries. In a letter dated September 14, Gina Sorrell of Brookshire Brothers' claims department wrote to Aldridge and notified him that "[a]s a **[\*\*56]** token . . . for being such a valuable customer," Brookshire Brothers agreed to pay for Aldridge's "first initial medical aid bill along with a follow-up visit and prescriptions for those visits." In a subsequent letter dated September 29, though Sorrell explained that Brookshire Brothers would additionally cover the costs of a visit with a neurosurgeon and "several weeks of physical therapy along with the prescriptions,"[1] she indicated Brookshire Brothers would not comply with Aldridge's request for a copy of the footage of his fall because she "only ha[d] one copy at this time." Shortly thereafter, Brookshire Brothers allowed the tape containing the entire day's worth of footage, with the exception of the eight-minute segment showing Aldridge's fall, to automatically erase, rendering it unable to comply with Aldridge's request when he did file suit.[2]

Brookshire Brothers continued to cover Aldridge's medical expenses for nearly a year until June 2005, when Gilmer "re-reviewed the video recording" and determined that Brookshire Brothers would **[\*32]** deny any responsibility with respect to Aldridge's claim. Aldridge retained an attorney, who requested a copy of the video referenced in Gilmer's June 2005 letter declining Aldridge coverage. Brookshire Brothers provided the eight minutes of footage covering the fall. But when Aldridge's attorney requested copies of additional surveillance footage beyond the preserved eight minutes (specifically, from 4:00pm **[\*\*58]** until 6:30pm on the day of the incident), Brookshire Brothers declined to provide the footage. And, rather than explaining that the footage had been automatically recorded-over pursuant to a standard and routine practice, Gilmer stated:

> The video you have requested does not focus on the area where Mr. Aldrige "fell." Please understand that short of litigation, I have been reasonably generous in what I have provided thus far. It is a "slip & fall" case. Seems we know how these ultimately resolve. If you decide to pursue a legal action on behalf of your client, you are well aware that we would be obligated to furnish certain information at that time. We are not going to assist you further in helping you build your case.

When asked at trial why Brookshire Brothers allowed the footage to be erased, Gilmer testified he saved the selected eight minutes of video simply to verify Aldridge had actually fallen and that he "didn't get what [he] got in anticipation of this trial" because "[i]t wasn't a lawsuit when it happened." But Gilmer also acknowledged his awareness of the fact that a key issue in slip-and-fall cases is whether a store employee knew or reasonably should have known that a substance **[\*\*59]** was on the floor. In fact, at the time of trial, Gilmer testified that he had over four decades of experience working in the grocery store business, eighteen years of which he worked in the risk management department overseeing Brookshire Brothers' litigation. Despite Gilmer's knowledge and experience regarding slip-and-fall litigation, despite Aldridge's request for a copy of the footage of his fall less than two weeks after the fall occurred, and despite Brookshire Brothers' September 29 authorization of payment for Aldridge's medical expenses above and beyond the company's routine practice, the sole reason Gilmer provided for failing to preserve any more of the video was that he believed the rest of the footage "wasn't

---

[1]  Brookshire Brothers has a routine practice of covering the costs of an initial doctor's appointment and prescriptions. However, testimony at trial indicated that it was not routine practice for Brookshire Brothers to pay for the cost of a referral to a neurosurgeon and several weeks of physical therapy, as the September 29 letter indicated **[\*\*57]** Brookshire Brothers would cover. Thus, on September 29, when the entirety of the September 2 footage was still available, Brookshire Brothers' claims department had agreed to cover the costs of more than the routine initial doctor's appointment.

[2]  Gilmer testified that Brookshire Brothers' surveillance cameras are "on a clock," and the footage is recorded over every thirty-one days. Thus, the entirety of the September 2 video footage was presumably recorded over sometime in the beginning of October, roughly three weeks after Aldridge filed a customer incident report with Brookshire Brothers.

relevant″ and that he ″didn't know there was going to be a case″ at the time the rest of the footage was automatically erased.[3]

Arguing that the additional footage would have been helpful to the key issue of whether the substance was on the floor long enough for the employees of Brookshire Brothers to reasonably have discovered it, Aldridge moved for a spoliation instruction at trial.[4] The trial court allowed **[*33]** evidence of the spoliation to be admitted at trial and submitted an instruction to the jury. This instruction was one of the milder spoliation instructions, allowing, but not requiring, the jury to presume harm if the jury found Brookshire Brothers had spoliated evidence.[5] The jury returned a verdict in favor of Aldridge and awarded damages to compensate Aldridge for medical expenses and lost earning capacity.[6] The court of appeals affirmed.

## II. A Significant Departure from ″Broad Discretion″

Today, the Court **[**62]** eliminates a core component of our spoliation jurisprudence: the trial court's broad discretion in constructing an effective remedy. In *Trevino v. Ortega*, we specifically noted ″there is no one remedy that is appropriate for every incidence of spoliation; the trial court must respond appropriately based upon the particular facts of each individual case.″ *969 S.W.2d 950, 953 (Tex. 1998)*. And in *Wal-Mart Stores, Inc. v. Johnson*, we likewise explained ″[a] trial judge should have discretion to fashion an appropriate remedy to restore the parties to a rough approximation of their positions if all evidence were available.″ *106 S.W.3d 718, 721 (Tex. 2003)*. Before today's decision, trial courts *did* possess the discretion to effectively craft spoliation remedies befitting of the particular facts and circumstances of each individual case.

Trial courts have had the ability to address the spoliation of evidence in a variety of circumstances precisely because the spoliation remedies at a trial court's disposal vary in severity. For instance, the court might allow recovery of the fees and expenses resulting from the spoliation, exclude evidence adduced from spoliated evidence, or hold a party in **[**63]** contempt. *See Tex. R. Civ. P. 215.2*; *Trevino, 969 S.W.2d at 959* (Baker, J., concurring). In particularly egregious cases of spoliation, the court may even strike pleadings or dismiss claims or defenses. *Trevino, 969 S.W.2d at 959*. And, before today, a trial court also had the option of allowing discussion of spoliation at trial, *Lively v. Blackwell, 51 S.W.3d 637, 641 (Tex. App.—Tyler 2001, pet. denied)*, or submitting any one of the following varieties of jury instructions:

---

[3]  Of course, Brookshire Brothers' duty to preserve the footage is not limited to whether Gilmer *knew* ″there was going to be a case;″ rather, as we articulated in *Wal-Mart Stores, Inc. v. Johnson*, the relevant inquiry in determining whether there was in fact a duty to preserve evidence is whether Gilmer ″[knew] *or* **[**60]** *reasonably should [have known]* that there [was] a *substantial chance* that a claim will be filed and that evidence in [Brookshire Brothers'] possession or control will be material and relevant to that claim.″ *106 S.W.3d 718, 722 (Tex. 2003)* (emphases added).

[4]  Additionally, Aldridge's attorney argued, and Gilmer agreed, that ″the video [Brookshire Brothers] had before it was erased would have shown someone standing at that area, getting some help, and cleaning up [the] **[**61]** chicken grease.″ Though it is undisputed the view of the floor itself was obscured by a table in the video, surveillance footage of the clean-up process could have provided evidence of the size of the spill by revealing, for example, the number of employees and the amount of time it took to clean up the spill.

[5]  Specifically, the trial court instructed the jury:

> If you find that Brookshire Brothers knew or reasonably should have known that such portions of the store video not preserved contained relevant evidence to the issues in this case, and its non-preservation has not been satisfactorily explained, then you are instructed that you may consider such evidence would have been unfavorable to Brookshire Brothers.

[6]  Notably, the jury awarded damages solely to compensate Aldridge for past and future medical expenses and past and future loss of earning capacity. It did not award Aldridge damages for physical pain and suffering, mental anguish, or physical impairment—so-called ″soft″ damages—casting doubt on the Court's presumption that the jury was unfairly prejudiced or inflamed by the presentation of the spoliation issue.

Michele Chimene

(1) The jury *may* presume evidence is harmful *if* it finds intentional spoliation, *Ordonez v. M.W. McCurdy & Co., 984 S.W.2d 264, 273 (Tex. App.—Houston [1st Dist.] 1998, no pet.)*;

(2) The jury *must* presume evidence is harmful *if* it finds intentional spoliation, *Wal-Mart Stores, 106 S.W.3d at 721*;

(3) That intentional spoliation has occurred, and the jury *may* presume the evidence is harmful, *id.*; or

(4) That intentional spoliation has occurred, and the jury *must* presume the evidence is harmful, *Trevino, 969 S.W.2d at 952*.

 **[*34]** Though the Court purports to "enunciate with greater clarity . . . the parameters of a trial court's discretion to impose a remedy upon a finding of spoliation," __S.W.3d at __, in effect the Court **[**64]** imposes new and significant restrictions on the trial court's discretion to submit a spoliation instruction to the jury. In essence, after today, trial courts may submit one, and *only one* spoliation instruction to the jury: an instruction that the trial court has found intentional spoliation has occurred, and therefore the jury *must* presume the evidence is harmful. All "milder" instructions, which permit the jury to exercise its judgment regarding the potential harm of the lost evidence to the spoliator's case, would require the jury to weigh the evidence of spoliation. This becomes an impossible task after the Court has concluded that, because of "the tendency of such evidence to skew the focus of the trial from the merits," such evidence of spoliation is inadmissible at trial. __S.W.3d at __.[7] At bottom, the trial court's discretion is eliminated: it may only issue one instruction (requiring the jury to presume harm) and only in rare circumstances (when the court has found (1) the spoliating party acted with specific intent to conceal discoverable evidence *and* no lesser remedy will suffice to overcome the prejudice the spoliation caused, or (2) a party negligently failed to preserve **[**65]** evidence *and* the nonspoliating party has been irreparably deprived of any meaningful opportunity to present a claim or defense).

This narrowing of the trial court's discretion stems from the Court's conclusion that spoliation instructions inappropriately shift the focus of the trial from the merits of the case to the spoliation. Though the Court assumes the admission of evidence regarding spoliation will wrongly shift the focus of litigation away from the merits of a case, it provides no evidence that this has been a significant problem in Texas, and certainly no evidence that the problem is so widespread as to require the displacement of decades **[**66]** of Texas spoliation jurisprudence affording trial courts broad discretion.[8] And although there is some risk that spoliation issues could shift the focus of litigation away from the merits of the case, the Court fails to indicate how restricting the trial court's discretion would mitigate this risk.

On the contrary, Texas already has a framework providing guidance for trial courts in determining whether the jury may hear evidence of spoliation: the Texas Rules of Evidence. Despite the admittedly fact-specific nature of cases involving spoliation, the Court concludes that such issues are better resolved by a blanket rule that **[**67]** spoliation evidence is per se inadmissible at trial. But the Rules of Evidence exist so that the Court need not engage in developing specific rules of admissibility **[*35]** for each type of evidence a trial court might encounter, recognizing the value of affording trial courts flexibility in making context-specific evidentiary rulings. Under *Rule 402*, irrelevant evidence is inadmissible. *TEX. R. EVID. 402*. And under *Rule 403*, relevant evidence may nevertheless be excluded if its probative value is substantially outweighed by, *inter alia*, the danger of unfair prejudice, confusion of the issues, or misleading the jury. *TEX. R. EVID. 403*. There is no indication that our trial courts are unable to appropriately apply *Rules 402* and *403* to determine the admissibility of spoliation evidence, and I would not so lightly displace it.

Despite the benefits of affording trial courts broad discretion and the absence of evidence indicating that Texas trial courts are regularly abusing that discretion, the Court concludes that it must depart from this well-established precedent and

---

[7]   The Court hedges its conclusion regarding the admissibility of evidence, explaining that "we recognize that all references to missing evidence, whether lost due to a party's spoliation or missing for some other reason, cannot and should not be foreclosed." __S.W.3d at __. But the Court's holding still deprives the trial court of the discretion to submit questions regarding spoliation issues to the jury and curtails the ability of the trial court to utilize the Rules of Evidence to ensure juries are not exposed to unduly prejudicial evidence.

[8]   As articulated above, our jurisprudence has allowed trial courts to craft spoliation instructions that permit the jury to make certain spoliation findings. *See Wal-Mart Stores*, 106 S.W.3d at 721 ("The instruction informed the jury that it must presume that the missing reindeer would have harmed Wal—Mart's case *if* the jury concluded that Wal—Mart disposed of the reindeer after it knew or should have known that they would be evidence in the case. Such an instruction is a common remedy for spoliation, with roots going back to the English common law." (emphasis added)).

significantly limit such discretion. Now, trial courts are stripped of their discretion to decide which spoliation instruction [**68] is appropriate and no longer have the option of allowing the jury to resolve factual disputes concerning spoliation.[9] Because I do not believe the Court has laid the foundation to support this substantial departure from settled spoliation jurisprudence, I cannot join its opinion.

### III. Willful Blindness

In addition to depriving trial courts of the substantial discretion they once exercised in remedying spoliation, the Court's [*36] framework—more specifically, the *manner* in which the Court's framework is applied—in effect permits a party to escape liability for the destruction of relevant evidence by simply demonstrating the destruction occurred [**71] in accordance with the party's existing document retention policy. On the contrary, "when a policy is at odds with a duty to maintain records, the policy [should] not excuse the obligation to preserve evidence." *See Trevino, 969 S.W.2d at 957* (Baker, J., concurring).

Under the Court's framework, a trial court must first make a preliminary determination as to whether spoliation occurred as a matter of law. This involves finding whether (1) the spoliating party had a duty to preserve evidence, and (2) the party breached that duty by failing to preserve the evidence. If the trial court finds both duty and breach, it must then assess the proper remedy. The trial court may submit a spoliation instruction only in circumstances where the party intentionally spoliated evidence and no lesser remedy will suffice to remedy the prejudice caused to the nonspoliating party (or in the rare instance when as a result of negligent destruction of evidence a party is "irreparably deprived of any meaningful opportunity to present a claim or defense"). __S.W.3d at __. With regard to "duty," the Court echoes the standard articulated in *Wal-Mart Stores*, namely that the duty to preserve evidence "arises [**72] only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim." *106 S.W.3d at 722*. The Court then expressly recognizes that "the party seeking a remedy for spoliation must demonstrate that the other party breached its duty to preserve material and relevant evidence." __S.W.3d at __.

Once the trial court determines that a party had the duty to preserve evidence and breached that duty by failing to do so, the Court's framework requires the trial court to assess an appropriate remedy. For an instruction to be proper, the trial court

---

[9] The Court maintains that its framework is in accordance with the majority of federal courts of appeals, but the majority of federal circuits also afford district courts discretion as to whether evidence of spoliation is admitted at trial and allow for a permissive (rather than mandatory) jury instruction. *See, e.g., Flagg v. City of Detroit, 715 F.3d 165, 178 (6th Cir. 2013)* ("Whether an adverse inference is permissive or mandatory is determined on a case-by-case basis, corresponding in part to the sanctioned party's degree of fault."); *Johnson v. Wells Fargo Home Mortg., Inc., 635 F.3d 401, 422 (9th Cir. 2011)* ("[T]he District Court's sanction, which permits the jury to decide if any documents were destroyed . . . strikes us as precisely the kind of flexible and resourceful sanction order that district judges should be encouraged to craft."); *Henning v. Union Pac. R.R. Co., 530 F.3d 1206, 1219-20 (10th Cir. 2008)* [**69] (explaining that "[a]n adverse inference is a powerful sanction as it . . . 'necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information in the unknown contents of an erased audiotape'" (citing *Morris v. Union Pac. R.R., 373 F.3d 896, 900-01 (8th Cir. 2004)))*; *Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 746-48 (8th Cir. 2004)* (finding no abuse of discretion in the district court's instruction to the jury that "[y]ou may, but are not required to, assume that the contents of the voice tape and track inspection records would have been adverse, or detrimental, to the defendant"); *United States v. Wise, 221 F.3d 140, 156 (5th Cir. 2000)* ("A district court has discretion to admit evidence of spoliation and to instruct the jury on adverse inferences."); *Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1159 (1st Cir. 1996)* ("The defendant also chastises the court for admitting evidence of another missing record . . . . Once again, the ruling cannot be faulted. The defendant had no good explanation for the missing log, and the jury was entitled to infer that the defendant destroyed it in bad faith."); [**70] *Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 157 (4th Cir. 1995)* ("We conclude that the district court acted within its discretion in permitting the jury to draw an adverse inference if it found that Vodusek . . . caused destruction or loss of relevant evidence."); *Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994)* ("The admissibility of spoliation evidence and the propriety of the spoliation inference is well established in most jurisdictions."); *see also Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., 685 F. Supp. 2d 456, 470 (S.D.N.Y. 2010)*, abrogated on other grounds by *Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135 (2d Cir. 2012)* ("The least harsh instruction *permits* (but does not require) a jury to *presume* that the lost evidence is both relevant and favorable to the innocent party.").

must find both intentional destruction[10] and prejudice to the nonspoliating party. The Court correctly notes that "intentional" encompasses the concept of "willful blindness" in which a party does not directly destroy evidence known to be discoverable, but nevertheless "allows for its destruction." ___S.W.3d at ___. Thus, under the Court's definition of "intentional," a party that is aware of circumstances that are likely to give rise to future litigation but fails to take reasonable steps to ensure the relevant evidence **[\*\*73]** is not destroyed pursuant to "routine practice" may be found to have intentionally destroyed evidence.

But the Court renders this notion of "willful blindness" ineffective, for it nevertheless concludes (assuming without deciding that Brookshire Brothers breached a duty to reasonably preserve evidence) "there is *no evidence*" that [Brookshire Brothers] failed to preserve the surveillance footage "with the requisite intent to conceal or destroy relevant evidence . . . ." __S.W.3d at __(emphasis added). Curiously, the Court reaches this result despite the fact that at the time Brookshire Brothers allowed the additional surveillance footage surrounding Aldridge's fall to automatically erase, Brookshire Brothers (particularly Gilmer) knew of Aldridge's fall, knew Aldridge had filed an incident report **[\*37]** documenting the fall and requested a copy of the footage, and had already agreed to cover Aldridge's medical costs **[\*\*74]** above and beyond the amounts Brookshire covered pursuant to its routine practice.[11] It was Gilmer's conscious and intentional choice not to review or retain any more than the eight minutes of surveillance footage capturing the fall, a choice he made despite his admitted awareness that a key issue in a slip and fall case is whether employees had actual or constructive notice that there was a substance on the floor. And this choice inevitably resulted in the destruction of relevant evidence approximately thirty days after the fall occurred. If the concept of "willful blindness" is to have any meaning, these circumstances must give rise to at least some evidence of "willful blindness," and therefore at least some evidence that Brookshire Brothers acted with the requisite intent. But as it stands, the Court's assurances that its spoliation framework encompasses instances of "willful blindness" ring hollow given the Court's application of the concept to the facts of this case.

As a result of new technology and the accompanying exponential increase in electronically-stored data, document retention policies are now the rule rather than the exception. *See, e.g., Arthur Andersen LLP v. United States, 544 U.S. 696, 704, 125 S. Ct. 2129, 161 L. Ed. 2d 1008 (2005)*. After all, "[n]o company possibly can, or should, indefinitely retain all the documents that it receives or generates." Margaret M. Koesel & Tracey L. Turnbull, Spoliation of Evidence: Sanctions and Remedies for Destruction of Evidence in Civil Litigation 25 (2d ed. 2006). Retention policies have become a nearly-essential part of the corporate landscape. And limited-duration retention policies have become commonplace. *See, e.g., In re Weekley Homes, L.P., 295 S.W.3d 309, 312 (Tex. 2012)* (company's thirty-day document retention policy for email resulted in only one responsive email). These limited-duration retention policies are designed not only to minimize the cost of discovery but also to assure the destruction of potentially unfavorable evidence.[12]

The proliferation of electronically stored information and the resulting increasing reliance on retention policies make the concept of "willful blindness" all the more acute.[13] Now more than ever, courts must **[\*38]** ensure that companies cannot "blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy." *See Lewy v.*

---

[10]   The Court's framework also allows for a spoliation instruction when evidence is merely negligently destroyed, but only under the exceptional circumstance that the spoliation irreparably deprives the nonspoliating party of any meaningful ability to present a claim or defense.

[11]   Again, Brookshire Brothers agreed to pay these additional medical costs in a letter dated September 29, 2004. Nevertheless, Brookshire Brothers maintained it was not aware of circumstances likely to give rise to **[\*\*75]** future litigation.

[12]   For example, a prominent document management services provider notes that one reason to define a retention policy is "[t]o reduce the dangers of eDiscovery. Minimizing the **[\*\*76]** amount of electronic material an organization keeps means it has less material to produce during eDiscovery—and consequently it is less likely to hand over incriminating evidence." Iron Mountain, *Setting Retention Policy for Electronic Information*, 2 (2011), http://imknowledgecenter.com/~/media/Files/Iron%20Mountain/Knowledge%20Center/Reference%20Library/White%20Paper/S/Setting%20Retention%20P

[13]   Indeed, as recent events have brought to light, even six-month retention policies can have devastating effects on the preservation of evidence. The Internal Revenue Service is currently under congressional investigation regarding potential discrimination in the way it processed applications for tax-exempt status. It has now revealed that it "has lost untold numbers" of emails relevant to the investigation as a result of computers crashing and, because pursuant to IRS policy, the backup tapes were recycled every six months. *See* Associated

*Remington Arms Co., 836 F.2d 1104, 1112 (8th Cir. 1988)*. But the Court's application of its spoliation framework opens the door for corporations to do just that. A party may allow for the destruction of relevant evidence, despite notice of circumstances likely to give rise to future litigation, and come away unscathed—an "advantage" of document retention policies already recognized in the document **[**77]** management services industry.[14]

Our spoliation framework should not allow a party to pre-select the evidence that will be available against it and escape liability for the destruction of unfavorable evidence under the guise of a retention policy that preserves information for a limited time. Unfortunately, today's holding potentially provides future litigants with a blueprint for **[**78]** successfully shielding themselves from spoliation liability: simply establish a document retention policy with a limited duration. Because I believe the Court's holding does not provide sufficient meaning to the concept of willful blindness given the trend toward increasing reliance on limited-duration document retention policies, I cannot join the Court in its new spoliation framework or its application to this case.

## IV. Rulemaking

The spoliation of evidence, as the Court notes, is both an evidentiary concept, as well as a particularized form of discovery abuse. Thus, spoliation issues are particularly well-suited to redress via the rulemaking process. Indeed, the Federal Rules Committees have recognized this, and as this Court acknowledges, are in the process of amending the Federal Rules to provide district courts with guidelines for addressing the spoliation of evidence. *See* __S.W.3d at __n.3. Rather than follow a similar path in Texas, the Court endeavors to create a spoliation framework outside of the rulemaking process under the rationale that "the challenges facing Texas courts are just as acute." __S.W.3d at __. But the Court has done nothing beyond considering this isolated **[**79]** case to determine what spoliation challenges are facing Texas courts. In crafting a spoliation rule outside the rulemaking process, the Court severely restricts the input of the bench, academy, and bar on what the contours of the spoliation rule should be.

As several former justices have observed, "[r]ather than make such changes by judicial decree, the better practice is to enact these reforms in conjunction with our rulemaking procedure . . . . A statute or rule could provide the precision that is lacking in the Court's opinion." *In re Allied Chem. Corp., 227 S.W.3d 652, 666 (Tex. 2007)* (Jefferson, C.J., dissenting); *see also Lehmann v. Har-Con Corp., 39 S.W.3d 191, 216 (Tex. 2001)* (Baker, J., concurring); *accord State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992) ("[W]e do not revise our rules by opinion."). Our rulemaking process is meant for situations such as this. The Constitution requires our Court to "promulgate rules of civil procedure for all courts not inconsistent with the laws of the state as may be necessary for the efficient and uniform administration of justice in the various courts." *Tex. Const. art. V, § 31*. To gather input, we appointed **[**80]** a Supreme Court Advisory Committee in **[*39]** 1940 to recommend rules of administration and procedure—which we continue to rely on to this day. Misc. Docket No. 11-9259 at 1, Supreme Court of Texas, Dec. 28, 2011. The committee—composed of fifty-two distinguished judges, professors, and attorneys—"solicits, summarizes, and reports to the Court the views of the bar and public." *Id.*[15]

The Court maintains that it need not concern itself with the rulemaking process because there is not a current rule in Texas addressing spoliation. But the absence of a rule does not mean we should de facto implement a rule without the thorough vetting the rulemaking framework affords. This is especially so because rules that impact how lawsuits are tried are best implemented with input from those that are actually trying cases—trial judges and litigators. As "the principal mechanism for the regulation of proceedings in Texas courts,"[16] the rulemaking process can ultimately yield clarity and uniformity not otherwise attainable when this process is eschewed in favor of judicially-crafted rules.

## V. Conclusion

---

Press, *Emails: IRS Official Sought Audit of GOP Senator*, The Washington Post, June 25, 2014, *available at* http://www.washingtonpost.com/business/archivist-irs-didnt-follow-law-with-lost-emails/2014/06/24/d8e7f7be-fc01-11e3-b8bf-54b8afb537b6_story.html.

[14]    *See supra* note 12.

[15]    In contrast, this case has received a total of three amicus briefs, all supporting the petitioner.

[16]    William V. Dorsaneo, **[**81]** *The History of Texas Civil Procedure*, 65 Baylor L. Rev. 713, 714 (2013).

Michele Chimene

As the Court itself acknowledges, trial courts have necessarily enjoyed broad discretion in remedying acts of discovery abuse, including evidence spoliation. Rather than leave such discretion intact, the Court displaces the discretion trial courts have properly used and in its place establishes a formulaic process. Further, though the Court in name embraces the concept of "willful blindness," the Court's application of its formulaic process to the facts of this case renders this concept essentially meaningless. This is particularly troublesome given the increasingly common corporate use of limited-duration document retention policies. Litigants and our system of justice deserve a spoliation framework that fosters the preservation of relevant evidence by equipping trial courts with the discretion to tailor remedies to the offenses committed. Until today, such a framework existed in Texas. Because the Court unnecessarily abolishes it, I respectfully dissent.

Eva M. Guzman

Justice